FILED
United States Court of Appeals
Tenth Circuit

March 25, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

HARRISON BEGAYE,

     Defendant-Appellant.

No. 09-4075

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:07-CR-00345-DB-1)**

Stephen J. Sorenson, Assistant United States Attorney (Brett L. Tolman, United States Attorney, with him on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

Bretta Pirie, Assistant Federal Public Defender (Steven B. Killpack, Federal Public Defender, with her on the briefs), Salt Lake City, Utah, for Defendant-Appellant.

Before **TYMKOVICH** and **HOLMES**, Circuit Judges, and **POLLAK**, District Judge.[*]

**HOLMES**, Circuit Judge.

---

[*] The Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Defendant-Appellant Harrison Begaye pleaded guilty to a felony information alleging aggravated sexual abuse of his eleven-year-old daughter, in violation of 18 U.S.C. §§ 2241(a) and 1153(a).  The district court calculated a advisory Guidelines range of 210 to 262 months' imprisonment.  In sentencing Mr. Begaye, however, the district court departed upward, sentencing him to twenty-five years (i.e., 300 months) in prison to be followed by lifelong supervised release.  On appeal, Mr. Begaye challenges his sentence, claiming that the district court inappropriately departed upward based on the "extreme psychological injury" to his victim, as well as his "extreme conduct," under the United States Sentencing Guidelines Manual ("U.S.S.G.") §§ 5K2.3 and 5K2.8, respectively.  He also claims that the district court failed to adequately explain the degree of departure granted.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I. BACKGROUND

In May 2007, regional social workers, acting on a report from school officials of suspected child abuse, interviewed Mr. Begaye's six children.  During these interviews, the children, who ranged in age from four to fourteen, all showed signs that they feared for their own safety, with two of them specifically expressing fear of their father.  The children reported frequent physical abuse by Mr. Begaye, including whippings with horsewhips, bullwhips, sticks, and even

- 2 -

bricks. Four of the children had visible red marks on their backs, and one had a BB pellet lodged in his nose from where his father, he claimed, had shot him. In addition, each of the children had red "pokes" on their arms from where Mr. Begaye had punished them using a horse syringe. The children were subsequently removed from Mr. Begaye's home.

Shortly thereafter, Mr. Begaye's eldest daughter, Ja.B., was interviewed by an F.B.I. agent. At that time, she acknowledged that she had been sexually abused by her father.[1] Although initially hesitant to talk about the abuse,[2] Ja.B. eventually admitted that she had been the victim of a series of rapes spanning multiple years. According to the young girl, Mr. Begaye had sexually assaulted her almost weekly in their family home beginning when she was in the first grade. During the assaults, Mr. Begaye would remove her pants and then have sex with her, sometimes forcing her to be on top. When she would "try to get off, [Mr. Begaye would] pull [her] legs down," hold her hands, or otherwise force her to continue. R., Supp. Vol. V, Exh. 2, at 46:16–46:28, 51:30–53:40. Ja.B. told the agent that Mr. Begaye would repeatedly ask her, "Does that feel good?," to which she would "always say, 'No.'" *Id.* at 47:10–30, 1:11:26–35.

---

[1] The interview was recorded, and a digitized copy of the interview was submitted to the district court with the government's motion for an upward departure.

[2] According to Ja.B., Mr. Begaye had threatened to "throw us around, all of us" if she ever mentioned anything about the abuse. R., Supp. Vol. V, Exh. 2, at 12:25–13:58 (Recorded Interview with Ja.B., dated May 16, 2007).

In the wake of these revelations, Mr. Begaye was charged in a six-count indictment for offenses arising from his abuse of Ja.B. and her five siblings. For raping Ja.B., Mr. Begaye faced three counts of aggravated sexual abuse of a child under the age of twelve, within Indian Country, in violation of 18 U.S.C. §§ 2241(c) and 1153(a). Seeking to avoid the difficulties a trial would impose on Ja.B. and her young siblings, however, the government permitted Mr. Begaye to plead guilty to a single count of aggravated sexual abuse under a different provision, 18 U.S.C. § 2241(a). Following the entry of his plea, the district court determined Mr. Begaye's sentence range under the Guidelines to be 210 to 262 months.

The provision under which Mr. Begaye was originally indicted, § 2241(c), carries a mandatory minimum sentence of 30 years' imprisonment. In contrast, the charge to which he pleaded guilty, § 2241(a), has no minimum sentence. Prior to sentencing, the government moved for an upward departure or upward variance, arguing that "the facts of this case justify a sentence of 360 months even though it is not mandatory for the crime to which [Mr. Begaye] pled guilty." R., Supp. Vol. V, at 14 (Mot. for Upward Departure & Upward Sentencing Variance, filed Apr. 8, 2009). The government based its request for an upward departure on U.S.S.G. §§ 5K2.3 ("Extreme Psychological Injury"), 5K2.8 ("Extreme Conduct"), 5K2.21 ("Dismissed and Uncharged Conduct"), and 5K2.0(a)(2)(B)

("Unidentified Circumstances").  It also sought an upward variance based upon the factors set forth in 18 U.S.C. § 3553(a).

Mr. Begaye filed a motion in response, arguing, *inter alia*, that an upward departure was not warranted for extreme conduct or extreme psychological injury because the government never produced comparative evidence of these factors. He asked the district court instead to vary downward based upon § 3553(a)'s factors to a sentence of 120 months, averring that his contrition, amenability to treatment, and low level of intelligence all militated towards a below-Guidelines sentence.

After a hearing, the district court denied Mr. Begaye's motion and granted the government's motion.  The court departed upward under §§ 5K2.3 and 5K2.8. In doing so, the court stated:

> I find that the crime that was committed, looking at all of the facts and circumstances, represented a crime that was unusually heinous, cruel, brutal or degrading to the victim.  I will refer to 5K2.8 of the guidelines, the sentence guidelines and that language, and recognizing in the guideline system that that is anticipated to be a possible ground for an upward departure.
>
> I also find that . . . the facts indicate[, as required by 5K2.3, that] a psychological injury and a physical injury more serious than normal has been demonstrated to the Court in this case. . . .
>
> . . . Mr. Begaye pled guilty to aggravated sexual abuse under Section 2241(a), and that is an admission of aggravated sexual abuse of another person on an Indian reservation by force or threat.  That is what he pled to.  I am entitled as the Judge to look at the facts and circumstances that underlie that plea.  That

includes in this case the fact that he *repeatedly* had improper sexual intercourse with his young daughter over, the facts demonstrate to me, *a period of years*. I am looking at those as the actual facts of this case and not looking at those as the facts that underlie or that were the basis for another count that has been dismissed. Those are the facts of this case.

. . . I'm using the guidelines, which in this case have a range of 210 to 268[3] months, and I am going above that because of the two reasons that I just indicated, under 5K2.8 and 5K2.3. I am staying generally within the guideline process for doing this.

. . . I find an appropriate sentence to be here a 25-year sentence which is an upward departure of some roughly two and a half years.

R., Vol. II, Tr. at 30–32 (Sentencing Hr'g, dated Apr. 15, 2009) (emphasis added). Mr. Begaye now appeals his sentence.

## II. DISCUSSION

On appeal, Mr. Begaye lodges three challenges to the district court's decision to depart upward. He claims, first, that the district court abused its discretion in departing upward based on Ja.B.'s alleged "extreme psychological injury" because the court lacked an adequate factual basis for doing so. In particular, he asserts that the government failed to put forth comparative evidence demonstrating the psychological injury that is normally suffered by victims of aggravated sexual abuse, which he reads as a prerequisite for a departure under

---

[3] The district court apparently misspoke: the recommended Guidelines range was actually 210 to 262 months. R., Vol. III, at 11 (Presentence Report, dated Mar. 12, 2009).

§ 5K2.3, and that the district court inappropriately relied on unfounded government assertions in making its departure assessment, while also unjustifiably discounting other potential factors that might have affected Ja.B.'s psychological condition. Mr. Begaye also maintains that the district court lacked an adequate factual basis to support a finding of "extreme conduct" under § 5K2.8. Borrowing heavily from his first claim, Mr. Begaye posits that the district court abused its discretion in departing upward under this provision because no comparative evidence was offered to show that his conduct was more "heinous, cruel, brutal, or degrading" than that normally perpetrated by those who commit aggravated sexual abuse. Finally, Mr. Begaye believes that the district court erred in failing to adequately explain the degree of the departure granted in this case.

The government, in contrast, insists that a "district court enjoys an institutional advantage in drawing on its own extensive experience in applying the Guidelines," and "may conclude that such departures are warranted without receiving evidence about what usually happens in other cases." Aplee. Br. at 14–15. It argues that the undisputed facts of this case gave the district court ample basis for departing under both §§ 5K2.3 and 5K2.8. It further submits that the district court's explanation for its sentence was more than adequate, noting that the court made clear that it considered both the evidence and the parties'

arguments prior to making its determination. We address each of these claims in turn.

## A.    Standard of Review

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), "we review sentences for reasonableness under a deferential abuse-of-discretion standard." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1214 (10th Cir. 2008). "Reasonableness review is a two-step process comprising a procedural and a substantive component." *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)); *accord United States v. A.B.*, 529 F.3d 1275, 1277 (10th Cir. 2008).

"A sentence is procedurally reasonable when the district court computes the applicable Guidelines range, properly considers the § 3553(a) factors, and 'afford[s the defendant his] rights under the Federal Rules of Criminal Procedure.'" *United States v. Martinez-Barragan*, 545 F.3d 894, 898 (10th Cir. 2008) (alternation in original) (quoting *United States v. Geiner*, 498 F.3d 1104, 1107 (10th Cir. 2007)). "In calculating the proper Guideline range, the district court is still required to consider and apply the departure provisions in appropriate cases." *United States v. Fonseca*, 473 F.3d 1109, 1112 (10th Cir. 2007). The government asserts that Mr. Begaye's challenge to the district court's upward departure determination categorically presents an issue of procedural

reasonableness.  *See* Aplee. Br. at 16 ("A challenge to a district court's departure decision amounts to a claim of procedural error.").  We need not test the accuracy of that assertion because Mr. Begaye only professes to raise a challenge to the procedural reasonableness of the district court's upward-departure decision.  Aplt. Opening Br. at 6.  Consequently, we are free in the context of this case to focus solely on "whether the district court committed any error in 'calculating or explaining the sentence.'"  *United States v. Martinez*, 610 F.3d 1216, 1223 (10th Cir.) (quoting *Alapizco-Valenzuela*, 546 F.3d at 1214), *cert. denied*, 131 S. Ct. 543 (2010).

As relevant here, we have articulated the controlling standard as follows:

> Our analysis of the propriety of an upward departure is . . . guided by the traditional four-part test, which inquires (1) whether the district court relied on permissible departure factors, (2) whether those factors removed a defendant from the applicable Guidelines heartland, (3) whether the record supports the district court's factual bases for a departure, and (4) whether the degree of departure is reasonable.

*United States v. Robertson*, 568 F.3d 1203, 1211 (10th Cir.), *cert. denied*, 130 S. Ct. 814 (2009).

"In considering these prongs, 'we apply a unitary abuse of discretion standard.'"  *Alapizco-Valenzuela*, 546 F.3d at 1215 (quoting *United States v. Munoz-Tello*, 531 F.3d 1174, 1186 (10th Cir. 2008)).  However, the "degree of deference" accorded to the district court under this standard "varies depending on the 'essential nature of the question presented.'"  *Munoz-Tello*, 531 F.3d at 1186

(quoting *United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006)).  "As a practical matter," we have observed, "this standard affords more deference to factual questions and less (if any) deference to legal ones."  *Alapizco-Valenzuela*, 546 F.3d at 1215.  As such, "this standard of review is similar to the standard we apply in determining whether the district court *first* arrived at the appropriate advisory Guidelines range."  *Id.* at 1216 n.2.  In other words, it is akin to the standard under which "we review *de novo* the district court's legal conclusions pertaining to the Guidelines and review its factual findings . . . for clear error." *United States v. Todd*, 515 F.3d 1128, 1135 (10th Cir. 2008); *see also United States v. Angel-Guzman*, 506 F.3d 1007, 1014 n.5 (10th Cir. 2007) ("Determining whether a sentence is procedurally proper—an inquiry which this Court dubs 'procedural reasonableness'—employs the standards of clear error as to findings of fact and de novo review as to conclusions of law.").

**B.     Departure for Extreme Psychological Injury Under § 5K2.3**

Mr. Begaye's principal challenge to his sentence is that the district court erred in departing upward under § 5K2.3 because the record was inadequate to support such a departure.  *See Robertson*, 568 F.3d at 1211 (indicating that the record must support the factual bases for departure).  Section 5K2.3 allows a court to depart from the Guidelines heartland range when "a victim or victims suffered psychological injury much more serious than that *normally resulting from commission of the offense*."  U.S.S.G. § 5K2.3 p.s. (2008) (emphasis

added).[4]  Mr. Begaye avers that "evidence of a victim's psychological injuries is inadequate to support a departure under § 5K2.3 without context regarding injuries ordinarily experienced by victims of the offense conduct."  Aplt. Opening Br. at 10–11.  He concludes, therefore, that the district court abused its discretion in applying § 5K2.3 because "the government offered no evidence from which the district court could have determined the typical psychological injuries associated with [his] offense."  *Id.* at 11.

In making his argument, Mr. Begaye relies heavily on this court's holding in *United States v. Okane*, 52 F.3d 828 (10th Cir. 1995).  In *Okane*, we stated as a general rule that, "before a sentencing court may depart upwards under [§ 5K2.3], there must be evidence of: (1) the nature of the injury actually suffered by the victims in this case, *and* (2) the psychological injury 'normally resulting from the

---

[4]    The policy statement to § 5K2.3 provides, in pertinent part:

> If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. . . .

> Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns.

U.S.S.G. § 5K2.3 p.s.

- 11 -

commission of the offense.'" *Id.* at 835 (quoting U.S.S.G. § 5K2.3 p.s.). The comparative nature of § 5K2.3, we reasoned, dictated that "there must be some evidence of both of these elements in order to enable the sentencing court to determine whether the injury actually suffered is sufficiently serious, relative to the normal injury incurred, to warrant a departure." *Id.*

The government does not deny that it failed to offer evidence suggesting the level of psychological injury "normally" suffered by a victim of aggravated sexual assault. It contends, however, that, even after *Okane*, we "have never *required* that separate expert or comparative evidence be a part of every departure consideration" under § 5K2.3. Aplee. Br. at 19 (emphasis added). The government maintains that sentencing courts may still depart under this provision even absent specific comparative evidence when the extraordinary nature of the victim's psychological injury is "self-evident," *id.* (quoting *United States v. Atkinson*, No. 94-4229, 1995 WL 620142, at *6 (10th Cir. Oct. 16, 1995)) (internal quotation marks omitted), and argues that Mr. Begaye's position "ignore[s] the substantial discretion and deference afforded the district courts" in the realm of sentencing, *id.* at 21. We agree.

Although it is true that the government bears the burden of showing that the victim suffered psychological injury greater than that which "normally" results from the crime of conviction, *see United States v. Zamarripa*, 905 F.2d 337, 341 (10th Cir. 1990), *abrogated on other grounds by Williams v. United States*, 503

U.S. 193 (1992), "[t]here is no hard and fast rule establishing the type and quantum of evidence sufficient to meet this burden," *United States v. Chatlin*, 51 F.3d 869, 874 (9th Cir. 1995). *See United States v. Phipps*, 368 F.3d 505, 515 (5th Cir. 2004) (affirming a § 5K2.3 departure based on "the unrebutted statements by the victim establish[ing] that she has suffered extraordinary psychological injury"), *vacated on other grounds by Gilley v. United States*, 543 U.S. 1104 (2005); *United States v. Oliver*, 118 F.3d 562, 567 (7th Cir. 1997) (finding no error in the district court's decision to depart upward under § 5K2.3 based solely on "a psychologist's report establishing the psychological damage to the victim"); *United States v. Anderson*, 5 F.3d 795, 804–05 (5th Cir. 1993) (finding that a victim's letter describing substantial changes in her psychological and behavioral functioning was, alone, a sufficient basis on which to depart under § 5K2.3); *cf. United States v. Fawbush*, 946 F.2d 584, 586 & n.2 (8th Cir. 1991) (finding inadequate evidence that either of the victims suffered psychological injury greater than "normal" where the district court did not have the benefit of expert testimony and the only evidence presented was that one victim "has been participating and continues to participate in individual group and family therapy").

Furthermore, although it certainly may be prudent for prosecutors in most instances following *Okane* to present comparative evidence indicating the "normal" level of psychological injury inflicted on victims of the offense of

conviction, we have never held that the government must *always* put forth such comparative evidence before a district court may depart under § 5K2.3.[5] *See, e.g.*, *Atkinson*, 1995 WL 620142, at \*6 ("*Okane* established a general rule, but it did not and could not purport to address every circumstance in every conceivable case.").[6] Nor are we inclined to do so now. District courts enjoy an "institutional

---

[5] In *Okane,* we specifically did *not* decide "the manner in which the prosecution might attempt to carry its burden" in showing departure under § 5K2.3 to be warranted; instead, we commented only that "reliance on an expert witness would likely be sufficient, *but not necessary*." *Okane*, 52 F.3d at 836 n.8 (emphasis added); *cf. Zamarripa*, 905 F.2d at 341 (holding that the district court clearly erred in departing under § 5K2.3 where "the parties stipulated the [expert witness] was unable to state that the harm to the victim was greater than normal" *and* "the presentence report . . . add[ed] nothing to support a finding of unusual psychological injury"). Ignoring the ramifications of our decision in *Okane*, Mr. Begaye nevertheless asserts in his opening brief that the district court abused its discretion in departing upward because "expert testimony is [required] to determine typical psychological injuries for purposes of § 5K2.3," and none was provided in this case. Aplt. Opening Br. at 12. Not only has this circuit not adopted that position, but several of our sister circuits have declined to do so as well. *See Chatlin*, 51 F.3d at 874 (holding that expert testimony was not needed to support a departure under § 5K2.3); *Anderson*, 5 F.3d at 805 ("While some testimony by a counselor or other expert in psychology would certainly be of value in determining this issue, such evidence is not always a prerequisite for a [§ 5K2.3] departure."); *United States v. Miller*, 993 F.2d 16, 21 (2d Cir. 1993) (affirming a § 5K2.3 departure without expert testimony).

[6] This issue was squarely at the forefront of our unpublished decision in *Atkinson*, where a panel of this court held that a departure under § 5K2.3 is justifiable even without an offering of comparative injury so long as the extreme nature of the psychological injury is "self-evident." 1995 WL 620142, at \*6. We recognize, of course, that *Atkinson* is not binding precedent; however, given its factual similarity, we find its reasoning particularly persuasive.

In *Atkinson*, the defendant appealed an upward departure under § 5K2.3, claiming, as Mr. Begaye does here, that the district court erred in finding that his

(continued...)

- 14 -

advantage" in making departure decisions because "they see so many more Guidelines sentences than appellate courts do." *Gall*, 552 U.S. at 52 (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)) (internal quotation marks omitted); *see also Robertson*, 568 F.3d at 1213–14 ("This standard accounts for the district court's 'extensive experience in applying the Guidelines,' a familiarity

---

[6](...continued) victims had suffered extreme psychological injury because it failed to first make a finding as to what constituted "normal" psychological injury for the victim of the offense of conviction—specifically, the transmission of threats in interstate commerce. In departing, the district court had relied on statements by the victims to the effect that, due to Mr. Atkinson's threats, they had become "prisoners in [their] own homes," they suffered from "paralyzing fear," and had forsaken any hope of future intimate relationships. *Id.* at *5. One even went so far as to plan suicide, hoping that Mr. Atkinson would "settle for [her] death and leave [her] mother, two daughters, and granddaughter alone." *Id.*

In affirming the district court's departure, we recognized that *Okane* established only a "general" rule, and that "we have never required empty form when the substance is evident":

> Thus, for example, in a case where a person receiving a threat drops dead of shock, no one can seriously argue that the district court should make a separate finding that "normal" injury from receiving a threat does not include dropping dead. Some things are self-evident.

*Id.* at *6. We then concluded that it was clear that implicit within the district court's holding was the finding that the injury that "normally" results from the crime of conviction "does not include the entire panoply of plans for suicide, being a prisoner in one's home, foreclosure from new relationships, ongoing medical care and medication, irrevocable lifestyle changes attested to by neighbors, friends, and a therapist, and more." *Id.*

We find the logic in *Atkinson* compelling, and it guides much of our decision here.

we lack." (quoting *United States v. Shumway*, 112 F.3d 1413, 1427 (10th Cir. 1997))).  And we believe that when it is patent that the psychological injury to the victim is "much more serious than normally resulting from commission of the offense," it would be a needless exercise in form over substance to require the presentation of comparative evidence and explicit court findings regarding that evidence as a predicate for a departure under § 5K2.3.  *See, e.g.*, *Oliver*, 118 F.3d at 567 ("[W]e have not required a comparative analysis where the evidence revealed substantial psychological damage.").[7]

---

[7]     A number of other courts have similarly found comparative evidence unnecessary to support a departure under § 5K2.3.  *See Chatlin*, 51 F.3d at 874 (affirming a § 5K2.3 departure when a psychologist's report "guided the court's decision to depart upward" despite the fact that neither the report, nor any of the other evidence adduced by the government, indicated what a "normal" level of psychological suffering was for victims of the crime of conviction); *Anderson*, 5 F.3d at 804–05 (upholding departure under § 5K2.3 based solely on a letter from the victim describing the psychological consequences of her victimhood; no comparative evidence was required); *United States v. Ellis*, 935 F.2d 385, 396 (1st Cir. 1991) (requiring no comparative evidence to support an upward departure under § 5K2.3 based on a counselor's report that the victim had suffered "extreme stress, fear of physical harm to herself and her family, and guilt over these traumatic experiences"); *United States v. Pergola*, 930 F.2d 216, 219 (2d Cir. 1991) (affirming upward departure under § 5K2.3 based on the victim's statements and the nature of the undisputed crimes committed; no comparative evidence required); *see also United States v. Mitchell*, No. 96-6292, 1997 WL 325920, at *3 (10th Cir. June 16, 1997) ("Despite the government's failure to produce evidence of the psychological injury normally resulting from the communication of a threat, and the resulting failure of the court to make a finding on this matter, we do not think a remand is necessary here." (citation omitted)); *Atkinson*, 1995 WL 620142, at *5–6; *cf. United States v. Thin Elk*, 321 F.3d 704, 709 (8th Cir. 2003) (holding that a court may depart under § 5K2.3 when "psychological injury was present to an exceptional degree"; no comparative evidence required).

We are presented with just such a case here. The record is rife with evidence of the extreme nature of Ja.B.'s psychological injuries. At sentencing, the district court had before it multiple professional assessments—uncontested by Mr. Begaye—diagnosing Ja.B. with post-traumatic stress disorder and chronic anxiety, and indicating that she suffered from recurrent dreams and hallucinations that required medication. As a result of her trauma, Ja.B., according to one professional, "was not oriented for person, place and time." R., Supp. Vol. V, at 80 (Mental Health Assessment, dated Apr. 2, 2008). Another described her as "fearfully dependent, socially anxious, and protectively sad." *Id.* at 106 (Psychosocial Assessment, dated May 1, 2008).

Furthermore, an assessment of Ja.B. conducted several months after she was taken from her father's home indicated that,

> [f]earful of further rebuff, [Ja.B.] is likely to withdraw from painful peer and family relationships in an effort to prevent herself from venting her dismay more directly.
>
> She may experience increasing loneliness and isolation. Her underlying tension and emotional dysphoria are present in disturbing mixtures of anxiety and sadness.

*Id.* at 106–07. The report continued:

> Over an extended period of time, this uncomfortable and lonely girl has developed a pattern of dejection and discouragement. Blue, lacking in self-esteem, and fearful of provoking the ire of others, she may have become pessimistic about her future. What few pleasures she used to have may have diminished.

*Id.* at 107. The expert concluded by warning that Ja.B.'s trauma may result in a

"shrinking of her personal milieu." *Id.* at 108.

Perhaps most significantly, these reports indicated that Ja.B.'s symptoms persisted, and in some cases worsened, over a nine-month period following her removal from her home. The experts anticipated an "[o]ngoing" length of treatment, *id.* at 84 (Mental Health Assessment, dated July 16, 2008), and one professional cautioned that Ja.B.'s treatment "may prove slow and arduous," *id.* at 108. These reports reveal a child suffering severe, debilitating, and potentially long-term psychological damage as a result of Mr. Begaye's illicit conduct. On this record, it is clear to us that the district court's finding of extreme psychological injury to Ja.B. subsumed the predicate finding that the "normal" injury of a victim of aggravated sexual assault does not include the full array of discouraging symptoms exhibited by this young girl. As a result, we cannot conclude, as Mr. Begaye requests, that the district court effectively committed clear error in finding that Ja.B. suffered greater psychological injury than normal.

Moreover, we believe the approach adopted here today is more consistent with our "appellate responsibility" in the wake of *Williams v. United States*, 503 U.S. 193 (1992)[8]—namely, that "we should not remand if we are satisfied, as we are, that the district court would impose the same, reasonable sentence if we

---

[8] In *Williams*, the Supreme Court held that an appellate court can affirm a sentence, even if a district court relied on an improper ground in departing, so long as it is persuaded that the district court "would have imposed the same sentence absent the erroneous factor" and that the "departure is reasonable." 503 U.S. at 203.

require it to articulate with the detail specified [in our case law]." *United States v. O'Dell*, 965 F.2d 937, 939 (10th Cir. 1992); *accord United States v. Tisdale*, 7 F.3d 957, 965 n.8 (10th Cir. 1993). Where, as here, the victim's severe psychological injury is patent on the face of the record, it would be an empty exercise for us to send this case back to the district court to elicit additional evidence and make a further, explicit finding of fact regarding the "normal" level of psychological injury suffered by victims of aggravated sexual assault. We have no doubt that, were we to do so in this instance, the district court would invariably impose the same sentence on remand.

Mr. Begaye also makes two further arguments against the district court's decision to depart under § 5K2.3, neither of which gives us significant pause. In the first instance, Mr. Begaye suggests that, regardless of our view on the need for comparative evidence, an inadequate record exists to warrant this departure because "the prosecutor's conclusory assertions [that Ja.B. suffered extreme psychological harm are] [in]sufficient to carry the government's burden" in this case. Aplt. Opening Br. at 12. To be sure, a district court cannot depart upward based solely on the unfounded claims of the government. *See Okane*, 52 F.3d at 835 (government has the burden of showing, by a preponderance of the evidence, that the psychological injury inflicted was greater than normal); *Zamarripa*, 905 F.2d at 340–41 (same); *cf. United States v. Lara*, 975 F.2d 1120, 1127–28 (5th Cir. 1992) (finding that a § 5K2.3 departure was not justified by the findings of a

- 19 -

presentence report, which contained only conclusory statements concerning the psychological injury to the victim). But that is not the case here, and in arguing otherwise Mr. Begaye overlooks the nature of the record before the district court at sentencing.

As noted *supra*, when the district court conducted its departure assessment, it had before it a number of uncontested reports by medical professionals attesting to the significant psychological injury that Mr. Begaye inflicted upon his daughter. Additionally, the very nature of *Mr. Begaye's conduct* provided an additional basis beyond the reports for the district court's § 5K2.3 determination. In explaining its departure decision, the district court explicitly focused on the repetitive and prolonged nature of the abuse, concluding that Mr. Begaye's conduct qualified as "unusually heinous, cruel, brutal or degrading." R., Vol. II, Tr. at 30–31. We believe, as do several of our sister circuits, that this type of extreme perpetrator conduct is very germane to whether *the victim's* psychological injury is "much more serious than that normally resulting from commission of the offense," as required by § 5K2.3. *See, e.g.*, *Phipps*, 368 F.3d at 515–16 ("[W]e find that the district court's additional ground for departure—the extreme nature of the defendants' conduct—further supports our conclusion that the victim sustained extraordinary psychological damage."); *Anderson*, 5 F.3d at 805 ("We are supported in [our § 5K2.3 determination] by the last ground for departure, the heinousness of the defendants' conduct, which

provides strong grounds for departure."); *Pergola*, 930 F.2d at 219 ("Where the psychological injury caused by the defendant results from prolonged and repeated misconduct, it is difficult to assess the effect without considering the conduct itself."); *see also Mitchell*, 1997 WL 325920, at *4 (relying on defendant's conduct in affirming an upward departure under § 5K2.3).  Thus, Mr. Begaye's belief that the district court relied on "conclusory assertions" by the government when departing under § 5K2.3 is without basis; it is clear that the district court was referring to factors beyond the government's claims when it found that "*the facts* indicate [that] a psychological injury and a physical injury more serious than normal has been demonstrated to the Court in this case."  R., Vol. II, Tr. at 31 (emphasis added).

As a final challenge to the district court's departure under § 5K2.3, Mr. Begaye asserts that the application of this provision was inappropriate because "the evidence that is available in the record suggests that sources other than her father's abuse, however deplorable, could account for some of Ja.B.'s symptoms." Aplt. Opening Br. at 12.  In support of this contention, Mr. Begaye notes that *both* of Ja.B.'s parents were abusive, albeit in different ways, and that the government's own assessment of the girl indicated that a "significant family history may suggest that she is genetically or neurologically predisposed to anxiety problems." *Id.* at 13.  Even assuming both to be true, this is not enough to reverse Mr. Begaye's sentence.  To prevail, Mr. Begaye must demonstrate that

the district court's determination that his conduct *was* at least the principal

catalyst for Ja.B.'s extreme psychological injury was essentially *clearly*

*erroneous*. *See Alapizco-Valenzuela*, 546 F.3d at 1216 n.2; *see also Todd*, 515

F.3d at 1135 (noting that, in sentencing challenges, factual findings are reviewed

only for clear error). In simply pointing to other factors that *might* have impacted

Ja.B.'s psychological condition, Mr. Begaye utterly fails to carry his burden of

proof. *See United States v. Cardenas-Alatorre*, 485 F.3d 1111, 1119 (10th Cir.

2007) (recognizing that "[m]erely providing an alternative interpretation of the

facts . . . will not suffice" to meet the appellant's burden under the clear-error

standard). We hold, therefore, that the district court did not abuse its discretion

in departing under § 5K2.3.

## C. Departure for Extreme Conduct Under § 5K2.8

In addition to departing based on the psychological injury to Ja.B., the

district court departed upward based on Mr. Begaye's extreme conduct under

§ 5K2.8, stating that it "[found] that the crime that was committed, looking at all

of the facts and circumstances, represented a crime that was unusually heinous,

cruel, brutal or degrading to the victim." R., Vol. II, Tr. at 30–31.[9] In explaining

---

[9] The policy statement to § 5K2.8 provides:

If the defendant's conduct was unusually heinous, cruel, brutal,
or degrading to the victim, the court may increase the sentence
above the guideline range to reflect the nature of the conduct.
Examples of extreme conduct include torture of a victim,

(continued...)

its decision to depart upward, the district court referred only to "the fact that [Mr. Begaye] repeatedly had improper sexual intercourse with his young daughter over, the facts demonstrate . . . , a period of years." *Id.* at 31.[10]

Echoing his argument against the application of § 5K2.3, Mr. Begaye claims that the district court's departure under § 5K2.8 is unsupported by the record because "[t]he government offered no evidence to suggest that [his] conduct in this case was *more* 'heinous, cruel, brutal, or degrading to the victim'

---

[9](...continued)
> gratuitous infliction of injury, or prolonging of pain or humiliation.

U.S.S.G. § 5K2.8 p.s.

[10] Mr. Begaye asserts in his opening brief that the district court's decision to depart under § 5K2.8 was based on impermissible factors previously accounted for in the calculated Guidelines range. In making this argument, Mr. Begaye latches on to the fact that, at sentencing, the government urged application of § 5K2.8 based on his use of force and the fact that his victim was a child. He insists that "[i]t cannot be the case that the elements of the offense of conviction can serve as a basis for an upward departure for extreme conduct; in arguing that force was involved, the government has done no more than allege [that he] committed the offense." Aplt. Opening Br. at 9. Furthermore, he notes that Ja.B.'s young age was factored into his Guidelines range by virtue of two offense-level enhancements that were applied as a result of the victim being under the age of twelve and under his "custody, care, or supervisory control." *Id.* at 10. Mr. Begaye, however, mistakes the basis for the district court's decision to depart.

Although the government may have advocated for a departure based on the use of force and the victim's young age, the district court did not rely on those factors when issuing its sentence. Rather, the district court departed because Mr. Begaye "*repeatedly* had improper sexual intercourse with his young daughter over . . . *a period of years*." R., Vol. II, Tr. at 31 (emphasis added).

- 23 -

than that of other perpetrators of aggravated sexual abuse." Aplt. Opening Br. at 8 (emphasis added). Mr. Begaye contends, in other words, that § 5K2.8 demands that evidence be adduced establishing the "typical" case involving the crime of conviction, thereby creating a baseline against which the defendant's behavior can be compared.

As before, Mr. Begaye mistakes what is required to support the departure at issue. Nothing in the language of § 5K2.8 compels a district court to first establish the "typical" perpetrator offense conduct for this crime before departing under this provision. *See, e.g.*, *United States v. Queensborough*, 227 F.3d 149, 159 (3d Cir. 2000) (noting that the district court need not establish the contours of "a typical sexual assault case" prior to departing under § 5K2.8). Rather, "[t]hat section only requires that the court determine that the conduct involved 'was *unusually* heinous, cruel, brutal, or degrading.'" *Id.* (emphasis added) (quoting U.S.S.G. § 5K2.8 p.s.). This much is clear from the language of Guidelines. *See United States v. Nacchio*, 573 F.3d 1062, 1066 (10th Cir. 2009) ("We interpret the Sentencing Guidelines according to accepted rules of statutory construction. In interpreting a guideline, we look [first] at the language in the guideline itself . . . ." (quoting *United States v. Robertson*, 350 F.3d 1109, 1112 (10th Cir. 2003))). Had the Sentencing Commission intended to require the type of explicit comparison Mr. Begaye advocates, it very likely would have used more specific comparative language, as it did in § 5K2.3. The Sentencing Commission could

have, for instance, indicated that departure under § 5K2.8 was appropriate only where the defendant's conduct was "unusually heinous, cruel, brutal, or degrading to the victim when compared to the conduct normally involved in the commission of the offense." Significantly, it did not do so. Mr. Begaye's assertion that the government was required to present evidence establishing the "typical" perpetrator conduct in an aggravated sexual assault before the district court could depart under § 5K2.8 is simply without foundation in the Guidelines text, and thus we reject it.

Further, even reading Mr. Begaye's argument as simply asserting that there was an inadequate factual basis for the district court to determine that his conduct was "unusually heinous, cruel, brutal, or degrading," his claim would still fail. Mr. Begaye engaged in an extended campaign of abuse wherein he sexually assaulted his daughter on a regular basis for a number of years. The victimization of Ja.B. was both prolonged and unrelenting. The district court found as much, and Mr. Begaye does not now challenge this finding on appeal. In this circuit, "an upward departure *may* be supportable on the basis of [a defendant's] multiple sexual contacts with the same victim." *Zamarripa*, 905 F.2d at 341 (emphasis added); *see also Chatlin*, 51 F.3d at 873 ("While repetitive conduct is not specifically mentioned in the guidelines, it is an acceptable basis for an upward departure."); *Anderson*, 5 F.3d at 803–05 (finding no abuse of discretion when the district court departed upward under § 5K2.8 based on "the *number* and nature of

the *repeated* sexual abuses imposed upon the victim" (emphasis added)). We believe that "[t]he repeated sexual assault of [a victim] is precisely the sort of 'extreme conduct' contemplated by § 5K2.8." *United States v. Barragan-Espinoza*, 350 F.3d 978, 983 (9th Cir. 2003); *cf.* Fed. Sent. L. & Prac. § 5K2.8 (2011) ("Departures under [§ 5K2.8] . . . often involve factors that are accounted for by the guidelines, but which are present to an unusual degree.").

The repetitive nature of Mr. Begaye's abuse supports the district court's finding that his conduct met the requirements of § 5K2.8. However, the temporally protracted nature of Mr. Begaye's criminal conduct also underscores our conclusion that the court committed no error. The extended nature of Mr. Begaye's pernicious behavior leaves no doubt that this was no "routine" aggravated sexual assault (if one could ever label an aggravated sexual assault as "routine"). This type of prolonged victimization clearly resides beyond the bounds of "usual" criminal behavior, and thus properly supported the district court's departure for "extreme conduct." *See United States v. Gary*, 18 F.3d 1123, 1130 (4th Cir. 1994) (affirming a § 5K2.8 departure where the "extended nature" of the defendant's threatening conduct toward the victim "prolonged [her] pain and humiliation"). Considering all of this, we easily conclude that the district court also did not abuse its discretion in departing under § 5K2.8.

**D.     The District Court's Explanation for Its Sentencing Decision**

Finally, Mr. Begaye asserts—for the first time on appeal—that the district

court erred by failing to "explain the extent of the departure with th[e] degree of

specificity necessary."  Aplt. Opening Br. at 14.  Mr. Begaye contends that "[i]t is

not only the fact of a departure but its degree that district judges are obliged to

explain," and suggests that the district court, by "ma[king] only [a] passing

reference to the 18 U.S.C. § 3553(a) factors," did not properly articulate its basis

for imposing its selected sentence.  Aplt. Opening Br. at 14–15.

Because Mr. Begaye did not object to the district court's explanation for its

departure decision at sentencing, we review this claim only for plain error.

*United States v. Romero*, 491 F.3d 1173, 1176–78 (10th Cir. 2007); *see also*

*United States v. Uscanga-Mora*, 562 F.3d 1289, 1293 (10th Cir.) ("[P]lain error

review obtains when counsel fails to render a contemporaneous objection to the

procedural adequacy of a district court's statement of reasons at sentencing."),

*cert. denied*, 130 S. Ct. 289 (2009).  Under the rigorous plain-error standard, a

defendant has the burden of showing "(1) an error, (2) that is plain, which means

clear or obvious under current law, and (3) that affects substantial rights.  If he

satisfies these criteria, this Court may exercise discretion to correct the error if it

seriously affects the fairness, integrity, or public reputation of judicial

proceedings."  *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007)

(quoting *United States v. Kimler*, 335 F.3d 1132, 1141 (10th Cir. 2003)) (internal

quotation marks omitted); *accord United States v. Sprenger*, 625 F.3d 1305, 1306 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 1030 (2011).

A departure decision "will in most cases be due substantial deference, for it embodies the sentencing court's traditional exercise of discretion." *Koon*, 518 U.S. at 98; *accord United States v. Goldberg*, 295 F.3d 1133, 1138 (10th Cir. 2002). However, that discretion is not limitless. When a district court imposes a sentence outside the Guidelines range, it must state "the specific reasons for the imposition of [the] sentence." 18 U.S.C. § 3553(c)(2). There is no hard-and-fast rule dictating what a sentencing court must say by way of explaining its chosen, non-heartland sentence. However, "[d]istrict courts must expressly articulate not only the legal and factual reasons for a departure, but also the logical foundation for the degree of departure selected." *Robertson*, 568 F.3d at 1214; *see also United States v. Proffit*, 304 F.3d 1001, 1012 (10th Cir. 2002) ("Simply restating the justification for upward departure 'does not fulfill the separate requirement of stating the reasons for imposing the particular sentence.'" (quoting *United States v. Flinn*, 987 F.2d 1497, 1502 (10th Cir. 1993))).

Even assuming, *arguendo*, that the district court's explanation was insufficient, "the plain error test renders this a Pyrrhic victory." *Robertson*, 568 F.3d at 1215. As noted, in order to prevail under plain-error review, the appellant must also show that the error affected his substantial rights. In this context, Mr. Begaye must demonstrate that, "but for the claimed error, [his] sentence would

have been . . . different." *Uscanga-Mora*, 562 F.3d at 1295. Mr. Begaye fails to advance any argument as to how this error affected his sentence, and thus utterly fails to carry his burden. *See United States v. Vonn*, 535 U.S. 55, 62–63 (2002) ("When an appellate court considers error that qualifies as plain, . . . the defendant who sat silent at trial has the burden to show that his 'substantial rights' were affected."); *accord United States v. Small*, 423 F.3d 1164, 1190 n.15 (10th Cir. 2005) ("[I]n the plain-error context, . . . the defendant has the burden to show an effect on substantial rights."). Accordingly, even if the district court clearly or obviously erred in explaining the degree of Mr. Begaye's upward departure—an issue that we need not reach—Mr. Begaye's claim still fails under the third prong of the plain-error test. *See Robertson*, 568 F.3d at 1215.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Mr. Begaye's sentence.

09-4075, *United States v. Begaye*

**POLLAK**, District Judge, dissenting.

I join the court's opinion insofar as it affirms the District Court's imposition of an upward departure for unusually heinous conduct under § 5K2.8 of the Sentencing Guidelines. I dissent, however, from the court's affirmance of the upward departure imposed under § 5K2.3. In *United States v. Okane*, 52 F.3d 828 (10th Cir. 1995), this court held that a § 5K2.3 upward departure may only be granted where "there [is] some evidence of: (1) the nature of the injury actually suffered by the victims in this case, *and* (2) the psychological injury 'normally resulting from the commission of the offense.'" *Id.* at 835 (quoting U.S.S.G. § 5K2.3). The second of these requirements derives from the text of § 5K2.3 itself, which states that "the court may increase the sentence above the authorized guideline range" "*if* a victim or victims suffered psychological injury *much more serious than that normally resulting from commission of the offense*." U.S.S.G. § 5K2.3 (emphasis supplied); *see also Okane*, 52 F.3d at 835 ("Thus, there must be some evidence of both of these elements in order to enable the sentencing court to determine whether the injury actually suffered is sufficiently serious, relative to the normal injury incurred, to warrant a departure."). In this case, the government submitted no evidence of any kind concerning the psychological harms that "normally result" from conduct as monstrous as Begaye's. The

imposition of an upward departure under § 5K2.3 is, accordingly, inconsistent both with the text of the Guidelines and with *Okane*.

To overcome this inconsistency, the majority relies on authority from outside this circuit and on *United States v. Atkinson*, 70 F.3d 1282 (table), 1995 WL 620142 (10th Cir. Oct. 16, 1995), an unpublished decision of this court. *Atkinson*, however, excused the government from presenting evidence of the psychological harm that normally results from a crime of conviction that would not, under normal circumstances, result in *any* serious psychological harm to the victim. *Atkinson*, 1995 WL 620142, at *1,*6 (reviewing sentence imposed for the crime of making a threatening interstate communication). By contrast, Begaye's conduct—the repeated forcible rape of his young daughter—was so heinous, and the aggravated sexual abuse to which he pled guilty so serious, that Ja.B.'s psychological injuries, while unquestionably severe, are anything but "self-evident[ly]" abnormal or unexpected under the circumstances. *Id.* at *6. And although certain sister circuit precedent cited by the court is contrary to the rule announced in *Okane*, *see, e.g., United States v. Oliver*, 118 F.3d 562, 567 (7th Cir. 1997), *Okane* is binding in this circuit. It is, therefore, my respectful submission that neither *Atkinson*, nor the other precedent relied upon by the court, can sustain the court's holding.