FILED
United States Court of Appeals
Tenth Circuit

August 15, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STEVEN CLAY ROMERO,

Defendant-Appellant.

No. 10-1362
(D.C. No. 1:10-CR-00028-PAB-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **EBEL** and **O'BRIEN**, Circuit Judges.

---

Steven Clay Romero appeals his three-year sentence, imposed after

pleading guilty to one count of aggravated animal cruelty.  We AFFIRM.

**BACKGROUND**

On December 30, 2009, Romero tied a rope around the neck of Buddy, a

dog belonging to a family in Delta, Colorado, and dragged him to death behind a

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

pick-up truck on federal land. The evidence at the scene indicated that Buddy initially tried to keep up with the truck, but eventually fell, and was then dragged to death.

Romero was charged with "knowingly tortur[ing], needlessly mutilat[ing], and needlessly kill[ing] an animal." R., Vol. 1 at 6. These acts were in violation of Colorado Revised Statute § 18-9-202(1.5)(b) and the federal Assimilative Crimes Act, 18 U.S.C. § 13.[1] Romero pleaded guilty to an indictment in federal court.

The United States Probation Office prepared a presentence investigation report (PSR), indicating that while Romero was in jail for killing Buddy and before pleading guilty, he made a series of telephone calls attempting to silence witnesses and procure false grand jury testimony. Regarding the offense level for committing aggravated animal cruelty, the PSR found that the sentencing factors under 18 U.S.C. § 3553 controlled because there was no analogous guideline level. As for criminal history and offender characteristics, the PSR recounted Romero's ten prior felony convictions, poor physical health, mild mental retardation, amphetamine dependence, depression, and "[i]ntermittent [e]xplosive

_____

[1]    "[T]he Assimilative Crimes Act[ ] was enacted to fill gaps in criminal law otherwise applicable to federal enclaves by incorporating state law." *United States v. Pethick*, 513 F.3d 1200, 1201 n.1 (10th Cir. 2008). "The Act provides a method of punishing a crime committed on government reservations in the way and to the extent that it would have been punishable if committed within the surrounding jurisdiction." *Id.* (quotation omitted).

[d]isorder," R., Vol. 3 at 27. Finally, the PSR noted that under Colorado law, the presumptive sentence for aggravated animal cruelty is 12-18 months, but that the maximum could be doubled under certain circumstances. *See* Colo. Rev. Stat. § 18-1.3-401.

At sentencing, the district court concluded that Romero's prior felony convictions constituted extraordinary aggravating circumstances, doubling the possible maximum sentence to 36 months. *See id.* § 18-1.3-401(6).[2] It then imposed a 36-month sentence after considering Romero's childhood, intellectual functioning, health problems, multiple probation violations, attempts to influence witnesses before pleading guilty, the large number of prior felony convictions, and the premeditated and cruel nature of the crime.

---

[2]     In full, the statute provides:

> In imposing a sentence to incarceration, the court shall impose a definite sentence which is within the presumptive range[ ] . . . unless it concludes that extraordinary mitigating or aggravating circumstances are present, are based on evidence in the record of the sentencing hearing and the presentence report, and support a different sentence which better serves the purposes of this code with respect to sentencing, as set forth in section 18-1-102.5. If the court finds such extraordinary mitigating or aggravating circumstances, it may impose a sentence which is lesser or greater than the presumptive range; except that in no case shall the term of sentence be greater than twice the maximum nor less than one-half the minimum term authorized in the presumptive range for the punishment of the offense.

Colo. Rev. Stat. § 18-1.3-401(6).

## DISCUSSION

## I.  The Sixth Amendment - *Apprendi*

Romero argues that the district court's reliance on his prior convictions to increase the presumptive maximum sentence for aggravated animal cruelty from 18 months to 36 months violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). There, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.  "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (emphasis omitted).  We review de novo the issue of whether Romero's sentence violates *Apprendi*.  *See United States v. Holyfield*, 481 F.3d 1260, 1261 (10th Cir. 2007).

Romero's argument is a non-starter, as *Apprendi* clearly allows a judge to consider as fact a prior conviction when imposing an enhanced sentence.  *See United States v. Harris*, 447 F.3d 1300, 1303, 1307 (10th Cir. 2006).  Romero attempts to avoid this principle by asserting that the district court examined the qualitative nature of his prior convictions and found that they were extraordinary and aggravating.  Further, he asserts that Colorado's aggravating sentencing

statute requires facts beyond the defendant's record of convictions. He is wrong on both counts.

First, the district court did not address the nature of Romero's prior felonies. Rather, the court simply noted the large number of felony convictions, stating, "[T]his is Mr. Romero's 11th felony conviction. When you get to No. 11, you should assume that you are going to be given the maximum sentence regardless of the nature of the crime." R., Vol. 2 at 52-53. Second, Colorado's aggravated sentencing statute does not require a factual inquiry regarding prior convictions beyond the defendant's record of convictions. Instead, it requires a sentence within the presumptive range, here 12-18 months, unless "extraordinary mitigating or aggravating circumstances are present." Colo. Rev. Stat. § 18-1.3-401(6). A large number of prior convictions can constitute an extraordinary aggravating circumstance regardless of the nature of those offenses. *See People v. Blessett*, 155 P.3d 388, 397-98 (Colo. App. 2006).[3]

---

[3]     To the extent Romero suggests that the district court aggravated his sentence based on the cruel nature of the instant offense and his post-arrest conduct, he misrepresents the record. The district court's observation that this was a "particularly cruel" and "particularly shocking" offense, R., Vol. 2 at 55, was not made in the context of determining the maximum sentence, but rather, in the context of determining where in the sentencing range of 12-36 months to place Romero based on the 18 U.S.C. § 3553 factors. The same is true of the district court's observation that Romero first attempted to avoid responsibility for the crime but then decided to plead guilty. This observation was not made in the context of deciding whether to apply an aggravated sentence.

Romero also claims that Colorado's aggravated sentencing statute violates *Apprendi* because the statute requires the trial judge to find that an aggravated range sentence "better serves the purposes of this code with respect to sentencing," Colo. Rev. Stat. § 18-1.3-401(6). But as noted by the Colorado Supreme Court, the statute "does not mandate a restricted or increased sentencing range based on judicial fact-finding." *Lopez v. People*, 113 P.3d 713, 716 (Colo. 2005) (en banc). Indeed, when a judge exercises his or her discretion to consider an aggravated sentence based on the fact of a prior conviction, "[t]he sentencing judge then has full discretion to sentence within this widened range according to traditional sentencing considerations." *Id.*

Romero further contends that even if there is no constitutional error, remand is necessary because the district court failed to consider the purposes of sentencing when sentencing him within an aggravated range. Because Romero did not raise this argument at sentencing, we review only for plain error. *See United States v. Steele*, 603 F.3d 803, 808 (10th Cir. 2010). To succeed, Romero must demonstrate "(1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* But Romero discusses none of these factors. Moreover, we note that the district court during sentencing did discuss sentencing purposes. *See, e.g.*, R, Vol. 2 at 52-55. There is no plain error.

## II.  Reasonableness

"We review sentences under an abuse of discretion standard for procedural and substantive reasonableness."  *United States v. Washington*, 634 F.3d 1180, 1184 (10th Cir. 2011).  "A sentence is procedurally reasonable when the district court computes the applicable Guidelines range, properly considers the § 3553(a) factors, and affords the defendant his rights under the Federal Rules of Criminal Procedure."  *United States v. Begaye*, 635 F.3d 456, 461 (10th Cir. 2011) (quotations and brackets omitted).  "In performing substantive reasonableness review, we consider whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)."  *United States v. Lewis*, 625 F.3d 1224, 1231 (10th Cir. 2010) (quotation omitted).

### A.  Procedural Reasonableness

Romero argues that the district court erred by not showing "*some* leniency" based on his acceptance of responsibility for the crime.  Aplt. Br. at 34.  "We review a district court's determination not to allow a reduction for acceptance of responsibility for clear error."  *United States v. Hutchinson*, 573 F.3d 1011, 1032 (10th Cir. 2009).  "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility."  U.S.S.G. § 3E1.1 cmt. n.5.  "For this reason, the determination of the sentencing judge is entitled to great deference on review."  *Id.*

Where, as here, "there is not a sufficiently analogous [sentencing] guideline, the provisions of 18 U.S.C. § 3553 shall control, *except that any guidelines and policy statements that can be applied meaningfully in the absence of a Chapter Two offense guideline shall remain applicable*." U.S.S.G. § 2X5.1 (emphasis added). Sentencing Guideline § 3E1.1 provides a two- or three-point decrease in the offense level when the defendant has accepted responsibility for his crime.

When determining where to sentence Romero within the aggravated range, the district court noted that after his arrest, Romero "attempt[ed] to avoid responsibility for the crime and get people to lie for him to avoid responsibility," but then "changed his attitude in the sense that he came in and he pled guilty to the charges here." R., Vol. 2 at 54. The district court explained that

> if there were an analogous sentencing guideline, [Romero's acceptance of responsibility] would be taken into account. Because there isn't, it doesn't enter into the calculation quite as much or as in a formal way as it would otherwise do, but nonetheless, the Court thinks that despite his acceptance of responsibility, a sentence at the top of the range is appropriate here.

*Id.* As the record indicates, the district court considered the extent to which Romero accepted responsibility, correctly noted there was no offense level to reduce, and decided that the maximum sentence was warranted.

We conclude that it was not clearly erroneous for the district court to sentence Romero to the maximum sentence despite his acceptance of

responsibility by entering a guilty plea. Even when there is a guidelines offense level, a guilty plea does not guarantee an offense-level reduction under § 3E1.1. *See* U.S.S.G. § 3E1.1 cmt. 3. The district court must still consider any conduct that is inconsistent with an acceptance of responsibility. *Id.* Here, after his arrest, Romero attempted to silence witnesses and procure false grand jury testimony. Further, as the district court noted when discussing the nature of the crime, Romero told a psychologist before sentencing that he did not drag Buddy to death, but rather, had strangled him to death before tying him to the truck. This statement contradicted the factual recitation contained in the plea agreement, and was offered to somehow mitigate the cruelty of his crime.

Given the totality of Romero's conduct with respect to accepting responsibility, we defer to the district court's decision to reject a § 3E1.1-type sentence reduction.[4]

## B. Substantive Reasonableness

Romero argues that "the district court imposed a substantively unreasonable sentence because, on the whole, it placed too little weight on [his] mental

---

[4]    Given the inapplicability of § 3E1.1 here, we need not decide what would be a "meaningful[ ]" substitute, U.S.S.G. § 2X5.1, for a two- or three-level reduction in offense level when there is no analogous sentencing guideline. In any event, the amount of such a reduction would appear particularly confined to the district court's judgment.

retardation." Reply Br. at 9.[5] Our review, however, is limited to determining "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Alapizco–Valenzuela*, 546 F.3d 1208, 1215 (10th Cir. 2008) (quotations omitted). "We may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo. Instead, we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the [sentence imposed]." *United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008) (quotations omitted).

The § 3553(a) factors include: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care or other correctional treatment; pertinent guidelines and policy statements; the need to avoid unwanted sentence disparities; and the need to provide restitution. 18 U.S.C. § 3553(a). The district court considered these factors, noting Romero's difficult childhood, various health problems, multiple probation violations, his attempts to influence witnesses before pleading guilty, his large number of prior felony convictions, the premeditated and cruel

---

[5] In his reply brief, Romero specifically eschews any attack on the procedural reasonableness of his sentence based on his mental retardation. Aplt. Reply Br. at 8-11.

nature of the crime, and the psychological evaluation report showing his low-level intellectual functioning. Specifically, in regard to his intellectual functioning, the district court stated that "the mental health aspect of it, while it may be explanatory, does not . . . form a strong mitigator in this case" given that when Romero was psychologically evaluated, he was found to be "about as capable as most people of recognizing conventional modes of response and knowing what is expected of him in terms of socially appropriate and law-abiding behavior." R., Vol. 2 at 52.

We conclude that the district court did not impose a substantively unreasonable sentence when sentencing Romero to 36-months' imprisonment.

**CONCLUSION**

The judgment of the district court is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Chief Judge
