**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 26, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOE WASETA,

      Defendant-Appellant.

No. 10-2097

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:08-CR-01853-MV-1)**

John V. Butcher, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Laura Fashing, Assistant United States Attorney (Kenneth J. Gonzalez, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Before **LUCERO**, **GORSUCH**, and **HOLMES**, Circuit Judges.

**HOLMES**, Circuit Judge.

Defendant-Appellant Joe Alfonso Waseta pleaded guilty to one count of

sexual abuse of a minor, in violation of 18 U.S.C. §§ 2243(a), 2246(2)(B), and

1153, for a sexual act committed against his stepson in Indian Country in 1989. The version of the United States Sentencing Guidelines ("Guidelines") in place at the time of Mr. Waseta's crime of conviction dictated a sentence range of fifteen to twenty-one months under the then-mandatory Guidelines sentencing regime. When Mr. Waseta was sentenced, however, the Guidelines regime was no longer mandatory; pursuant to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), it was (and remains) advisory. Under this advisory system, the district court varied upward and sentenced Mr. Waseta to forty-six months' imprisonment, to be followed by three years of supervised release. Mr. Waseta now appeals, claiming that the district court's sentence violated the ex post facto principles embodied in the Fifth Amendment's due process protections. More specifically, Mr. Waseta contends that application of the advisory Guidelines scheme resulted in a sentence that was utterly unforeseeable under the mandatory Guidelines in place at the time of his crime, and consequently effected an unconstitutional expansion of his exposure to punishment. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm his sentence.

## BACKGROUND

On August 13, 2008, Mr. Waseta was indicted by a federal grand jury on one count of engaging in sexual contact with a minor—his step-grandson—who had not yet attained the age of twelve, in Indian Country, in violation of 18 U.S.C. §§ 2244(c), 2246(3), and 1153. A superceding indictment filed on

September 23, 2008, added a second charge—that is, "knowingly engag[ing] in and attemp[ing] to engage in a sexual act with [his stepson], who had attained the age of twelve but not the age of sixteen years, and who was at least four years younger than the defendant," in violation of 18 U.S.C. §§ 2243(a), 2246(2)(B), and 1153. Importantly for purposes of this appeal, the second count indicated that the charged offense occurred "between June 1, 1989[,] and July 31, 1989." R., Vol. I, at 5 (Superceding Indictment, filed Sept. 23, 2008). Furthermore, while the new count alleged only a single sexual act, the charged offense was actually part of an eleven-year pattern of sexual abuse wherein Mr. Waseta would regularly engage in oral and anal sex with his stepson, often as frequently as twice a week. The abuse began when the victim was six years old.

Mr. Waseta pleaded guilty on April 14, 2009, to a one-count information that mirrored the second count of the superceding indictment. Soon thereafter, the U.S. Probation Office prepared Mr. Waseta's Presentence Investigation Report ("PSR") using the 1988 edition of the Guidelines.[1] The PSR indicated that Mr. Waseta had an adjusted offense level of fourteen, which, when combined with his

---

[1] The 1988 Guidelines were applied because the 1989 edition did not take effect until November 1, 1989, and the crime to which Mr. Waseta pleaded guilty took place in the summer of 1989.

criminal history category of I, yielded a Guidelines range of fifteen to twenty-one

months' imprisonment.[2]

Both parties filed sentencing memoranda. The government opposed a

sentence within the prescribed Guidelines range and requested an upward

departure under U.S.S.G. § 5K2.8 based on Mr. Waseta's "extreme conduct." In

so doing, the government emphasized the "horrific and degrading" nature of the

abuse, which began when the victim was only six years old and continued

relentlessly for over a decade. R., Vol. I, at 18–19 (U.S. Sentencing Mem., filed

Jan. 12, 2010). The government also asked for an upward variance, arguing that

"[t]he one-count information . . . does not fully detail the horrific crime that [Mr.

Waseta] committed against his minor stepson." *Id.* at 20.

Mr. Waseta, in contrast, requested that the court impose a Guidelines-

minimum fifteen-month sentence, which he claimed was "appropriate for a crime

that is more than twenty . . . years old, to which [he] has freely admitted his guilt

and attempted to make amends and reconciled with the victim, and for an

individual whose only prior conviction is a DUI from 1972." *Id.* at 24–25

(Sentencing Mem. & Objections, filed Jan. 12, 2010). He asserted that his ability

---

[2]    Pursuant to U.S.S.G. § 2A3.2(a), Mr. Waseta's base offense level
was fifteen. He received a one-level increase in his offense level because the
victim was in his custody or care, and a two-level reduction for acceptance of
responsibility, yielding an adjusted offense level of fourteen. *See* R., Vol. II, at
14–15 (PSR, dated June 17, 2009) (citing U.S.S.G. §§ 2A3.2(b)(1), 3A1.1
(1988)). All subsequent Guidelines citations are to the 1988 version.

"to reconcile [with his stepson] . . . not only contradicts the allegations [of force,] but shows that [his] illegal conduct . . . is consistent [with] the heartland violation of 18 U.S.C. § 2243(a), statutory rape."[3]  *Id.* at 31.  Furthermore, Mr. Waseta filed a response to the government's request for an upward departure or variance, arguing, *inter alia*, that a sentence above the prescribed range of the Guidelines would create an "unwarranted disparity . . . among similarly charged 1989 defendants" in violation of the ex post facto principles inherent in his due process rights.  *Id.* at 50 (Resp. to Gov.'s Request for Upward Departure & Variance, filed Jan. 15, 2010).

At sentencing, the district court declined to grant a departure under § 5K2.8, reasoning that "the circumstances surrounding Mr. Waseta's offense . . . do not fit into the [§] 5K2.8 mold of unusually heinous, cruel, brutal or degrading conduct[, i.e.,] torture or gratuitous infliction of injury."  R., Vol. III, at 42 (Tr., Sentencing Hr'g, held Mar. 25, 2010).  Nevertheless, it found that a sentence within the prescribed Guidelines range was inappropriate because this was "a far cry from the typical statutory rape case."  *Id.*  Rejecting Mr. Waseta's suggestion that "the victim's age is the only element making the offense conduct criminal," *id.* at 43, the district court concluded that an upward variance was appropriate

---

[3]     "The [Sentencing] Commission . . . has formulated each Guideline to apply to a heartland of typical cases."  *Koon v. United States*, 518 U.S. 81, 94 (1996).  "If the case falls outside the heartland (*i.e.*, is not the usual type of case), the court may decide to depart from the prescribed sentencing range."  *United States v. Whiteskunk*, 162 F.3d 1244, 1248 (10th Cir. 1998).

based on the factors set forth in 18 U.S.C. § 3553(a). Specifically, the district court found that, while "[t]he offense of conviction is statutory rape of a child between the ages of 12 and 16 . . . [,] the circumstances surrounding the offense demonstrate that the conduct was much more severe." *Id.* at 44. Citing the length of the abuse and "the manipulation and coercion inherent in the entire relationship," *id.* at 44–45, the district court sentenced Mr. Waseta to forty-six months' imprisonment, followed by three years' supervised release. It stated:

> After the Supreme Court's . . . decision in [*Rita v. United States*, 551 U.S. 338 (2007)], it is clear that this Court must not presume that the advisory guideline range is reasonable. In the post-*Booker* sentencing framework, a sentence of 15 to 21 months for the conduct I have described is simply unreasonable. In this case, Mr. Waseta engaged in sexual conduct with his adolescent stepson, which he acknowledges was only possible through his own improper coercion and manipulation, yet his base offense level under the 1988 guidelines is identical to that of a 20-year-old engaging in sexual intercourse with his or her 16-year-old girlfriend or boyfriend. . . . Mr. Waseta then received a mere one-level enhancement because the victim was in his care, custody or control, which raised his guideline range by three [months]. This three-[month] bump in no way adequately represents the heightened culpability of his conduct as compared to the average statutory rape case, nor does it acknowledge the life-long damage inflicted on [the victim].

*Id.* at 51.

In explaining its decision, the district court also addressed a number of Mr. Waseta's legal challenges to a possible upward variance, including his ex post facto challenge:

While it is true that the ex post facto clause requires the Court to sentence Mr. Waseta under the laws in place at the time he committed the offense, the clause does not forbid retroactive application of the advisory guideline regime. The Tenth Circuit affirmed this principle in [*United States v. Portillo-Quezada*, 469 F.3d 1345 (10th Cir. 2006) (per curiam)]. . . . The Tenth Circuit again reaffirmed this principle in [*United States v. Cachucha*, 484 F.3d 1266 (10th Cir. 2007)], but did not decide whether the principle applies to sentences higher than any that might realistically have been imagined at the time of the crime. . . . With respect to this question the Tenth Circuit left unanswered, the Court notes that the statutory maximum penalty is five years, which indicates that such a sentence might realistically have been imagined when Mr. Waseta committed the events. . . . [T]he Court obviously does not intend to sentence Mr. Waseta above the statutory maximum in effect at the time of the offense, and therefore finds this case does not implicate the ex post facto clause.

*Id.* at 47–48. The court then entered its judgment and sentence, and this timely appeal followed.

## DISCUSSION

The Ex Post Facto Clause is recognized as a "limitation upon the powers of the Legislature." *Marks v. United States*, 430 U.S. 188, 191 (1977). Nevertheless, to a large extent, its principles apply to judicial decision-making through the operation of the Fifth Amendment's due process guarantee. *See Rogers v. Tennessee*, 532 U.S. 451, 456–57 (2001); *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964); *see also Portillo-Quezada*, 469 F.3d at 1355.[4] This

---

[4] As we allude to *supra*, the protections of the Ex Post Facto Clause do not apply with full force in the due process context. In *Rogers*, the Court explained:

(continued...)

- 7 -

limitation on judicial decisions is "based upon the 'core due process concepts of

notice, [foreseeability], and, in particular the right to fair warning.'" *Portillo-

Quezada*, 469 F.3d at 1355 (alteration omitted) (quoting *Rogers*, 532 U.S. at 451);

*see Barton*, 455 F.3d at 654 ("[W]hen addressing ex post facto-type due process

concerns, questions of notice, foreseeability, and fair warning are paramount.");

*United States v. Dupas*, 419 F.3d 916, 921 (9th Cir. 2005) ("Fair warning, then, is

the touchstone of the retroactivity analysis under the Due Process Clause.").

Some "after-the-offense enlargement of the contours of the crime or maximum

sentence by judicial construction" may be "so surprising and troubling" as to

implicate the due process protections of the Fifth Amendment.  *United States v.*

---

[4](...continued)
> The Ex Post Facto Clause, by its own terms, does not apply to courts.  Extending the Clause to courts through the rubric of due process thus would circumvent the clear constitutional text. It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

532 U.S. at 460.  As the Sixth Circuit has noted, "Ex post facto concerns require a slightly different analysis than do similar due process concerns." *United States v. Barton*, 455 F.3d 649, 655 n.4 (6th Cir. 2006).  At least in part due to the "institutional and contextual differences" referred to by the *Rogers* Court, 532 U.S. at 460, courts tend to "apply the Ex Post Facto Clause in a more stringent fashion than they do the ex post facto aspect of the Due Process Clause." *Barton*, 455 F.3d at 655 n.4; *see* Wayne R. LaFave & Austin W. Scott, *Criminal Law* § 2.4(c), at 103 (2d ed. 1986) (noting that "the prohibition of retroactive judicial decisions is not as extensive as the prohibition of ex post facto statutes"); *see also* Paul H. Robinson, *Fair Notice and Fair Adjudication: Two Kinds of Legality*, 154 U. Pa. L. Rev. 335, 354 (2005) (discussing *Rogers*'s restriction of the "potential breadth" of ex post facto principles in the due process context).

*Lata*, 415 F.3d 107, 110–11 (1st Cir. 2005); *see Rogers*, 532 U.S. at 461 (noting

that *Bouie* "restricted due process limitations on the retroactive application of

judicial interpretations of criminal statutes to those that are 'unexpected and

indefensible by reference to the law which had been expressed prior to the

conduct in issue'" (quoting *Bouie*, 378 U.S. at 354)).

On appeal, Mr. Waseta raises a single challenge to his sentence—namely,

that the district court's application of the advisory Guidelines sentencing system

effected an ex post facto violation because it "greatly expanded the parameters of

possible penalties, [which] was utterly unforeseeable at the time of [his]

offense[, and] permitt[ed] a much lengthier sentence than he could have received

[under the mandatory Guidelines]." Aplt. Opening Br. at 6. At first blush, Mr.

Waseta's argument might appear to be foreclosed by our precedent, which

dictates that, generally speaking, the "retroactive application of the advisory

Guidelines regime does not violate the ex post facto component of the Due

Process Clause."[5] *Portillo-Quezada*, 469 F.3d at 1355; *see United States v.*

---

[5] All other circuits are in accord on this point. *See, e.g.*, *Lata*, 415 F.3d at 109 (1st Cir.); *United States v. Vaughn*, 430 F.3d 518, 524–25 (2d Cir. 2005); *United States v. Pennavaria*, 445 F.3d 720, 723–24 (3d Cir. 2006); *United States v. Davenport*, 445 F.3d 366, 369–70 (4th Cir. 2006), *overruled in part on other grounds by Irizarry v. United States*, 553 U.S. 708 (2008); *United States v. Austin*, 432 F.3d 598, 599–600 (5th Cir. 2005); *Barton*, 455 F.3d at 652–57 (6th Cir.); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Wade*, 435 F.3d 829, 832 (8th Cir. 2006); *Dupas*, 419 F.3d at 919–21 (9th Cir.); *United States v. Duncan*, 400 F.3d 1297, 1306–08 (11th Cir. 2005); *United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006).

(continued...)

*Herula*, 464 F.3d 1132, 1138 (10th Cir. 2006) (same); *United States v. Rines*, 419 F.3d 1104, 1106–07 (10th Cir. 2005) (finding no due process violation in the retroactive application of *Booker*, and "declin[ing] Defendant's invitation to hold that the Supreme Court ordered us to violate the Constitution"). However, as the district court noted in this case, this circuit and, most notably, the First Circuit, have specifically held open the question of whether the ex post facto principles inherent within the Fifth Amendment's due process protections are implicated when "the post-*Booker* sentence imposed was 'higher than any that might *realistically have been imagined* at the time of the crime.'" *Cachucha*, 484 F.3d at 1269–70 (emphasis added) (quoting the First Circuit's decision in *Lata*, 415 F.3d at 112); *see United States v. Scott*, 529 F.3d 1290, 1305–06 (10th Cir. 2008) (acknowledging this open question, but affirming the appellant's sentence on the grounds that it was foreseeable under the pre-*Booker* Guidelines regime); *cf. Barton*, 455 F.3d at 657 (discussing *Lata* and noting that "the problem that the First Circuit identifies is, as it concluded, unlikely to occur, [but] its caveat is a reasonable one").

Mr. Waseta now seeks to raise the issue left open by this court in *Cachucha*

---

[5](...continued)

Thus, to the extent that Mr. Waseta could be understood as asserting that *any* application of the advisory Guidelines sentencing regime to crimes committed pre-*Booker* would be unconstitutional, this argument has been squarely rejected by this court, as well as all of our sister courts of appeals.

and *Scott*. He posits that "[t]he increase in [his] sentence that resulted from the district court's application of *Booker*, which elevated his sentence from a top-of-the-Guidelines range [of] 21 months to 46 months, was utterly unforeseeable at the time the offense was committed." Aplt. Opening Br. at 17–18. "We review this legal issue de novo." *Scott*, 529 F.3d at 1305.

"Under the mandatory guidelines," Mr. Waseta argues, "a sentencing court was required to impose a sentence within the guideline range unless it made a finding that a specific ground(s) for departure existed." Aplt. Opening Br. at 21. "Because there were no grounds for upward departure here," Mr. Waseta contends that "the maximum punishment that could have been imposed . . . under the mandatory Guidelines was the top of the guideline range, *i.e.*, 21 months." *Id.* at 22. He asserts that anything beyond that Guidelines sentence was "utterly unforeseeable" at the time of his offense, and thus offends the ex post facto principles of the Fifth Amendment. *Id.* at 18.

According to the government, however, Mr. Waseta is mistaken in asserting that his sentence was "utterly unforeseeable" under the mandatory Guidelines scheme—a conclusion which it claims is compelled by our decision in *Scott*. In the alternative, the government avers that the statutory maximum sentence for Mr. Waseta's crime of conviction—five years—made his forty-six month sentence sufficiently foreseeable to be consonant with due process.

In *Scott*, we addressed a similar challenge to the one raised by Mr. Waseta

in this appeal.  There, as here, the appellant had committed his crime of conviction—in that case, transporting a minor across state lines in violation of the Mann Act—prior to the Supreme Court's decision in *Booker*, but was sentenced afterwards.  Although the appellant's calculated Guidelines range was seventy to eighty-seven months' imprisonment, the district court imposed an upward variance, and sentenced him to 120 months in prison.  Consequently, the appellant challenged his sentence, claiming that it "violated [the] ex post facto principles inherent in the Due Process Clause because [his] sentence would have been 'inconceivable' under the mandatory [Guidelines] scheme in effect at the time of the crime."  *Scott*, 529 F.3d at 1294.

In making his argument in *Scott*, the appellant relied heavily on the First Circuit's decision in *Lata*.  In that case, under an advisory Guidelines regime, the First Circuit upheld a sentence imposed for a pre-*Booker* crime against a challenge similar to the one we face today on the ground that it was "not wildly different than a sentence that *might well have been imposed* under the [mandatory] guidelines for someone with Lata's criminal record and offense-related conduct."  *Lata*, 415 F.3d at 112 (emphasis added).  It reserved for a future case, however, the question of whether a due process claim may be raised if "a sentence is imposed for a pre-*Booker* crime that is higher than any that might realistically have been imagined at the time of the crime."  *Id.*

The appellant in *Scott* argued that he presented just such a case, contending that "the [120-month] sentence [wa]s so far above the maximum Guidelines sentence of 87 months that the statutory maximum alone did not provide him with sufficient due process notice." 529 F.3d at 1306. We disagreed. Instead, we concluded that the Guidelines provided the appellant with "fair warning of his eventual sentence." *Id.* at 1307. Specifically, we observed that it was "foreseeable that his crime of conviction could have resulted in [a higher] offense level," noting that the appellant could not, for example, rely on the grant of a two-level downward adjustment for acceptance of responsibility because "this adjustment is dependent on defendant's behavior and decisions, and a court's evaluation thereof, *after the crime takes place.*" *Id.* (emphasis added). Furthermore, we indicated that, "[h]ad the district court chosen to apply [U.S.S.G.] § 4A1.3[, which authorizes upward departures based upon the inadequacy of a defendant's criminal history category] . . . , [the appellant] would have been eligible for an upward departure":

> The district court found by a preponderance of the evidence that, prior to committing the crime of conviction, Scott employed several women as prostitutes, including one other juvenile. Based on those findings, the district court *could have imposed* an upward departure of at least three criminal history points based on Scott's unconvicted trafficking and recruiting activities.

*Id.* (emphasis added). Combining these two possibilities, we calculated a potential Guidelines range of 108 to 135 months, which bounded the actual

sentence received by the appellant. *See id.* at 1307–08. As the sentence imposed was not "higher than any that might realistically have been imagined at the time of the crime," *id*. at 1308 (quoting *Lata*, 415 F.3d at 112) (internal quotation marks omitted), we concluded that applying the advisory Guidelines sentencing regime in that instance did not alter the appellant's "exposure to punishment," and therefore did not implicate his due process rights, *id.* (quoting *Portillo-Quezada*, 469 F.3d at 1355) (internal quotation marks omitted).

The government maintains that our decision in *Scott* "forecloses [Mr.] Waseta's argument" that his forty-six month sentence was "utterly unforeseeable." Aplee. Br. at 10. We agree. In applying the 1988 Guidelines, there are a number of ways—including upward departures—that a court *could have* arrived at a sentencing range that encompasses Mr. Waseta's actual sentence.

At the outset, it is important to underscore the nature of our inquiry. At least in this context, the Due Process Clause principally is concerned with "concepts of notice, foreseeability, and, in particular the right to fair warning." *Rogers*, 532 U.S. at 459; *accord Portillo-Quezada*, 469 F.3d at 1355; *see Hooks v. Sheets*, 603 F.3d 316, 321 (6th Cir. 2010) ("[T]he principles of the Ex Post Facto Clause apply to the courts through the Due Process Clause. Because these principles are viewed through the lens of due process in the judicial context, the constitutionality of judicial action turns on the traditional due process principles

- 14 -

of 'notice, foreseeability, and, in particular, the right to fair warning.'" (citation omitted) (quoting *Rogers*, 532 U.S. at 458–59)); *see also Alston-Graves*, 435 F.3d at 343 ("The due process claim, resting on ex post facto principles, can succeed only if [the defendant] did not have fair warning of the potential punishment at the time of her conduct."). "Courts are concerned about notice, foreseeability, and fair warning because it is expected that both statutes and judicial interpretations of those statutes affect the behavior of the public. Thus, the public must be able to adequately inform itself of a law or a judicial interpretation before acting." *Barton*, 455 F.3d at 654–55; *see Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) ("Elementary considerations of fairness dictate that individuals should have *an opportunity* to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." (emphasis added)); *cf. Atkins v. Parker*, 472 U.S. 115, 130 (1985) ("All citizens are presumptively charged with knowledge of the law . . . . Arguably that presumption may be overcome in cases in which the statute does not allow a sufficient 'grace period' to provide the persons affected by a change in the law with an adequate opportunity to become familiar with their obligations under it." (citation omitted)).

Given this fair-warning concern, the central focus of the due process analysis is not on what a particular sentencing court actually *did after the crime was committed*, but on what the defendant could have realistically imagined that a

- 15 -

hypothetical sentencing court *could do* under the law at the time he committed the crime—particularly, how such a court might sentence the defendant under the Guidelines and all of its conceivably relevant reductions, enhancements, and departures. That realistically imaginable range of sentences provides the guidepost for assessing the constitutionality of the sentence actually imposed. Given the numerous complexities of the Guidelines, it should not be surprising that "any prospective guideline range estimated before the crime has been committed is far more contingent and uncertain than may be true on the day of sentencing." *Lata*, 415 F.3d at 112. In other words, "a defendant has notice of a broader range of sentences than only those within the Guidelines range as it is eventually calculated." *Scott*, 529 F.3d at 1306.

Therefore, a defendant may be deemed to have fair warning at the time of his crime even if he does not know the precise sentence that he would face upon conviction. More specifically, if the offense occurred pre-*Booker*, a defendant may be deemed to have fair notice of his post-*Booker* sentence so long as "the sentence imposed is not *wildly different* than a sentence that might well have been imposed under the guidelines for someone with [the defendant's] criminal record and offense-related conduct." *Lata*, 415 F.3d at 112 (emphasis added); *see id.* ("Whether or not exactly the same sentence would necessarily have been imposed [pre-*Booker*] by departures under the guidelines is *necessarily uncertain*." (emphasis added)); *see also Barton*, 455 F.3d at 656 (noting that "prior to *Booker*,

- 16 -

upward departures could be granted for a multitude of conduct"); *cf. Barton*, 455 F.3d at 656 n.6 ("For instance, if a prior version of the Guidelines in effect at the time the crime is committed suggests a sentence of a fine and a later version recommends a period of imprisonment, such a difference might implicate the Due Process Clause.").

Like the appellant in *Scott*, Mr. Waseta could not have predicted *at the time of his crime* that he would receive the discretionary reduction for acceptance of responsibility "because this adjustment is dependent on [his] behavior and decisions, and a court's evaluation thereof, *after* the crime takes place." *Scott*, 529 F.3d at 1307 (emphasis added). Had such a reduction not been granted, Mr. Waseta's total offense level would have been sixteen, not fourteen. Indeed, Mr. Waseta does not appear to contest that he could not have reasonably foreseen this acceptance-of-responsibility reduction. *See* Aplt. Reply Br. at 6 ("It is true, as the government argues . . . , that this case is analogous to *Scott* with respect to the reduction for acceptance of responsibility.").

Moreover, following the reasoning in *Scott*, we conclude that a sentencing court also *could have* found that the calculated criminal history category "does not adequately reflect the seriousness of the defendant's past criminal conduct" based on "prior similar adult criminal conduct not resulting in a criminal conviction." U.S.S.G. § 4A1.3(e). A sentencing court reasonably could have concluded on these facts that an upward departure from a criminal history

category of I to a criminal history category of V—reflecting only four additional instances of rape, *see* U.S.S.G. § 4A1.1(a)—would be justified. *See Scott*, 529 F.3d at 1307 (applying a similar analysis). For a defendant with a criminal history category of V, the applicable sentencing range for a level-sixteen offense (i.e., Mr. Waseta's base offense level without acceptance of responsibility) in 1988 was forty-one to fifty-one months, which bounds the sentence that Mr. Waseta actually received. *See* U.S.S.G. ch. 5, pt. A (sentencing table).[6]

---

[6]    Mr. Waseta challenges the applicability of *Scott*, arguing that "[t]he *Scott* case came to this court on a very different footing than this case because the district court held an evidentiary hearing in *Scott* and made 'detailed factual findings.'" Aplt. Reply Br. at 2 (quoting *Scott*, 529 F.3d at 1296). Here, as Mr. Waseta notes, there was no evidentiary hearing. Because "he objected to allegations recounted in the PSR that might be used to support an upward variance," *id.* at 3, Mr. Waseta believes that the government, in asking us to apply *Scott*, "invites this court to presume that [it] could have proved the contested facts necessary [for] application of the . . . proposed increase[]," *id.* at 1. In support of his argument, Mr. Waseta points to Federal Rule of Criminal Procedure 32, which provides that during the sentencing proceeding the court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B).

For at least three reasons, however, we are disinclined to afford any decisional significance to this identified distinction between *Scott* and the instant case. First, although Mr. Waseta cited to and discussed *Scott* in his opening brief, *see* Aplt. Opening Br. at 17–18, he made no attempt at all to distinguish *Scott* from the present case, much less to distinguish it on the precise ground at issue here. Mr. Waseta advanced his argument distinguishing *Scott* for the first time in his reply brief. Consequently, the government had no opportunity to respond to this argument. Under our settled practice, we are therefore disposed to treat this argument as waived. *See, e.g.*, *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174–75 (10th Cir. 2005) (noting "the general rule that 'appellate courts will not

(continued...)

- 18 -

entertain issues raised for the first time on appeal in an appellant's reply [brief]'" (alteration in original) (quoting *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1277–78 (10th Cir. 1994))); *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("The reasons [for our practice] are obvious. [The appellant's action] robs the appellee of the opportunity to demonstrate that the record does not support an appellant's factual assertions and *to present an analysis of the pertinent legal precedent that may compel a contrary result*. The rule also protects this court from publishing an erroneous opinion because we did not have the benefit of the appellee's response." (emphasis added) (citation omitted)).

Second, although it is subject to serious question whether the district court ran afoul of Rule 32 when it failed to conduct an evidentiary hearing concerning the facts relevant to the sexual abuse of Mr. Waseta's stepson, Mr. Waseta's actions contributed to any potential error. Though Mr. Waseta made a general, unspecified objection to "allegations in the [PSR] that have been suggested as [grounds for] a possible upward variance," R., Vol. I, at 24, this sort of general objection is inadequate to trigger a district court's factfinding obligation under Rule 32. *See United States v. Chee*, 514 F.3d 1106, 1115 (10th Cir. 2008) ("[The defendant] had 'an affirmative duty to make a showing that the information in the [presentence report] was unreliable and articulate the reasons why the facts contained therein were untrue or inaccurate.'" (second alteration in original) (quoting *United States v. Rodriguez-Delma*, 456 F.3d 1246, 1254 (10th Cir. 2006))). Moreover, the majority of Mr. Waseta's objections related not to his sexual abuse of his stepson, but rather to allegedly untrue, unrelated allegations made by Mr. Waseta's ex-wife, her daughter, and John Doe I, another alleged minor victim of Mr. Waseta's sexual abuse and the subject of the initial indictment. *See* R., Vol. I, at 25 ("The capital objection by Mr. Waseta is to the false allegations made by Mr. Waseta's estranged ex-wife, Patti Waseta, her daughter, Brandi M., and her son, John Doe I."). At sentencing, the district court expressly indicated that it had not considered these allegedly false allegations, *see* R., Vol. III, at 44–45, and expressly identified the conduct related to Mr. Waseta's sexual abuse of his stepson that it had "considered in fashioning Mr. Waseta's sentence," *id.* at 44. Mr. Waseta did not object to the district court's methodology on the ground that it violated Rule 32, nor did he attempt to controvert the stepson-related conduct that the court identified. Thus, we will not entertain Mr. Waseta's efforts to undercut the persuasive force of *Scott* based on the district court's failure to conduct an evidentiary hearing about the supposedly controverted facts regarding Mr. Waseta's sexual abuse of his stepson. If the

(continued...)

Beyond *Scott*, under our case law, a court also *could have* departed upwards under U.S.S.G. § 5K2.0 based on Mr. Waseta's uncharged conduct. We approved such a departure under somewhat analogous circumstances in *United States v. Big*

---

[6](...continued)
district court committed any error in this respect (and we doubt that it did), Mr. Waseta contributed to that error.

Third, and perhaps most importantly from a substantive perspective, Mr. Waseta's argument misapprehends the appropriate nature of the due process inquiry. His argument erroneously focuses on the specific actions taken by the sentencing court *in this case*, after the crime was committed. However, as we noted *supra*, the applicable due process inquiry concerns notice, foreseeability, and fair warning *at the time the crime is committed*. *See, e.g.*, *Rogers*, 532 U.S. at 459. The analysis, therefore, does not turn on what a particular sentencing court actually *did after the crime was committed*, but on what the defendant could have realistically imagined a hypothetical sentencing court *could do* under the law at the time that he committed the crime—including how it might apply the relevant Guidelines. Mr. Waseta realistically could have imagined that a sentencing court would adhere to the prescriptions of Rule 32 and make findings concerning any controverted facts regarding his sexual abuse of his stepson. *See United States v. Hahn*, 359 F.3d 1315, 1330 (10th Cir. 2004) (en banc) (per curiam) (Lucero, J., concurring and dissenting) (noting that a "defendant [may] presume that the district court correctly understands its lawful statutory authority to impose a certain sentence"); *cf. United States v. Rose*, 185 F.3d 1108, 1111 (10th Cir. 1999) ("[A]bsent a contrary indication in the record, this court will assume that a district court weighed each of the sentencing factors set forth in [18 U.S.C.] § 3553(a) in exercising its discretion pursuant to [18 U.S.C.] § 3584, even where the district court does not explicitly so state at the sentencing hearing or in its order."); *United States v. Nelson*, 54 F.3d 1540, 1544 (10th Cir. 1995) ("If the record is ambiguous concerning the district court's awareness of its discretion to depart downward, we presume the court was aware of its authority."). And Mr. Waseta has not demonstrated on appeal—by specific reference to the factual circumstances of the offense (even as he views them)—why he realistically could not have imagined (pre-*Booker*) that those factual findings would support the sentence that the district court actually imposed upon him. Thus, from a substantive perspective, Mr. Waseta's attempt to distinguish *Scott* is misguided and untenable.

*Medicine*, 73 F.3d 994 (10th Cir. 1995), where the district court relied on the multi-count analysis of U.S.S.G. § 3D1.4 to depart upward five offense levels under § 5K2.0. *See id.* at 997 (finding the district court's § 5K2.0 departure appropriate when the defendant pleaded guilty to a single count of sexually abusing a minor, although the circumstances revealed a long-standing pattern of abuse).[7]  A similar five-level upward departure here, reflecting at least five other incidents of sexual abuse, would assign Mr. Waseta an offense level of twenty-one and a criminal history category of I, which would yield a Guidelines range of

---

[7]      In *Big Medicine*, the appellant pleaded guilty to one count of sexual abuse of a minor in violation of 18 U.S.C. §§ 2243(a) and 1153. *See* 73 F.3d at 995.  Like Mr. Waseta, Mr. Big Medicine's illicit conduct extended well beyond the charged offense—he had "admitted that he had had sexual intercourse with his stepdaughter on about seventy-five occasions over the previous four years, beginning when she was twelve years old." *Id.* at 996.  The PSR indicated—as it did here—that the defendant's offense level was fourteen, which, with a criminal history category of one, yielded a Guidelines range of fifteen to twenty-one months. *See id.*  The district court nevertheless sentenced the defendant to forty-six months' imprisonment (the same length as Mr. Waseta's sentence).  The court granted a departure under § 5K2.0, relying on the multi-count analysis of U.S.S.G. § 3D1.4 to increase Mr. Big Medicine's offense level by five. *See id.*  We found the departure to be appropriately tethered to the Guidelines, reasoning that "[b]ecause acts of criminal sexual abuse are excluded from being grouped together under the multi-count analysis, each act counts separately as one unit[, and therefore] [f]or anything more than five units, the increase is five levels." *Id.* at 997 (internal citations omitted); *see* U.S.S.G. § 3D1.2 cmt. n. 4, ex. 4 (counting individual acts of rape as non-grouping offenses); U.S.S.G. § 3D1.4 (adding five levels for five or more group units).  Although we "affirm[ed] the court's use of uncharged misconduct to depart upwardly," we ultimately remanded because the district court, in addition, had improperly relied on the victim's age as a departure factor. *Id.* at 998.

thirty-seven to forty-six months—a range that circumscribes the sentence actually imposed. *See* U.S.S.G. ch. 5, pt. A.

Furthermore, even assuming, as Mr. Waseta suggested before the district court, that the evidence was uncertain regarding "the frequency [and] time[] frames" of the alleged sexual abuse, R., Vol. I, at 43, we conclude that it was still realistically imaginable at the time that Mr. Waseta committed the alleged abuse that some district court *could* impose a forty-six month sentence. Significantly, Mr. Waseta has never explicitly denied that he *repeatedly* sexually abused his stepson, or that this abuse spanned a lengthy period of time. Consequently, in our view, a district court also *could have* departed under either U.S.S.G. § 5K2.3 for extreme psychological injury to the victim, or U.S.S.G. § 5K2.8 for extreme conduct. Although the district court *in this case* chose not to depart under either provision (and, in fact, specifically declined to depart under § 5K2.8 because it concluded that Mr. Waseta's actions "d[id] not fit . . . the [§] 5K2.8 mold," R., Vol. III, at 42), Mr. Waseta could have realistically imagined that *another* court might do so. Indeed, the holdings of this circuit, and others, certainly make such a scenario plausible.

For instance, we have observed that "an upward departure [under § 5K2.8] *may* be supportable on the basis of [a defendant's] multiple sexual contacts with the same victim." *United States v. Zimarripa*, 905 F.2d 337, 341 (10th Cir. 1990) (emphasis added), *abrogated on other grounds by Williams v. United States*, 503

U.S. 193 (1992); *see United States v. Begaye*, 635 F.3d 456, 469 (10th Cir. 2011) ("The repetitive nature of [the defendant's] abuse supports the district court's finding that his conduct met the requirements of § 5K2.8."); *see also United States v. Chatlin*, 51 F.3d 869, 873 (9th Cir. 1995) ("While repetitive conduct is not specifically mentioned in the guidelines, it is an accepted basis for an upward departure."). Moreover, the "temporally protracted nature" of abuse has also been recognized as grounds supporting a departure under § 5K2.8. *Begaye*, 635 F.3d at 469–70 ("The extended nature of [the defendant's] pernicious behavior leaves no doubt that this was no 'routine' aggravated sexual assault."); *see United States v. Gary*, 18 F.3d 1123, 1130 (4th Cir. 1994) (citing the "extended nature" of the defendant's threatening conduct toward the victim, which "prolonged [her] pain and humiliation," when affirming the district court's departure under § 5K2.8). As we discussed *supra*, Mr. Waseta does not dispute that he, in fact, committed a repetitive cycle of abuse over a lengthy period of time. Consequently, it was entirely foreseeable that another court could have found Mr. Waseta's conduct to be "extreme," and departed under § 5K2.8 accordingly.

Likewise, this court and others have found § 5K2.3 departures justified in situations involving the repeated sexual abuse of minors. *See, e.g.*, *Begaye*, 635 F.3d at 459, 467 (finding extreme psychological harm to the victim—the daughter of the defendant—who had been subjected to "a series of rapes spanning multiple years," and noting that "this type of extreme perpetrator conduct is very germane

to whether *the victim's* psychological injury is much more serious than that normally resulting from commission of the offense, as required by § 5K2.3" (internal quotation marks omitted)); *United States v. Ellis*, 935 F.2d 385, 395–97 (1st Cir. 1991) (upholding a departure under § 5K2.3 where multiple incidents of sexual abuse between an adult and his girlfriend's minor daughter, which were "particularly degrading and insulting" and extended over a period of years, resulted in severe emotional damage to the child); *United States v. Fire Thunder*, 908 F.2d 272, 275 (8th Cir. 1990) (affirming, without significant comment, a § 5K2.3 departure where the appellant had repeatedly sexually assaulted his young stepdaughter). Mr. Waseta's stepson described feelings of "[a]nger, depression and anxiety" when he recounted the abuse, and explained that the simple act of creating a victim statement "ma[de] [him] feel sick and afraid." R., Vol. II, at 13. Moreover, the district court recognized that Mr. Waseta had "inflict[ed] a lifetime . . . of pain" on his stepson. R., Vol. III, at 40.[8] Thus, it should realistically have been imaginable to Mr. Waseta at the time of his offense

---

[8] At oral argument, the government stated that the record before the sentencing court *in this case* was not sufficiently developed to support a departure under § 5K2.3. Even if this were true, however, for the reasons noted *supra*, that fact would not be significant in our due process analysis. Instead of focusing upon the precise condition of the record in this case, we inquire whether the universe of facts (established and even contestable)—including the fact that Mr. Waseta repeatedly sexually abused his stepson over a lengthy period of time—would have made it realistically imaginable to Mr. Waseta at the time of his crime that a sentencing court could apply the § 5K2.3 departure. And we answer that inquiry in the affirmative.

that some sentencing court might have departed upwards on the basis of extreme psychological injury to the victim.

Either ground, or a combination thereof, easily could have yielded a Guidelines-based sentence of forty-six months. A five-level departure upwards in the base offense level, for example, would have resulted in an offense level of 21, at which a criminal history category of I provides for a thirty-seven to forty-six month sentence. *See* U.S.S.G. ch. 5, pt. A; *see also United States v. Otto*, 64 F.3d 367, 371 (8th Cir. 1995) (upholding a district court decision imposing a six-level enhancement based on the combination of extreme conduct and extreme psychological harm to the victims). It is clear, therefore, that Mr. Waseta's sentence was not "higher than any that might realistically have been imagined at the time of the crime," nor did it "alter his exposure to punishment." *Scott*, 529 F.3d at 1308 (internal quotation marks omitted). Consequently, its imposition did not violate Mr. Waseta's right to due process.

Because Mr. Waseta's sentence clearly was realistically imaginable under the mandatory Guidelines system in place when he committed the crime for which he was convicted, we decline to address the government's further assertion that the statutory maximum alone provided adequate notice of any sentence up to that maximum, thereby satisfying the requirements of due process *See United States v. Carrizales-Toledo*, 454 F.3d 1142, 1149 (10th Cir. 2006) ("Because it is not necessary to the resolution of this case, we decline to address [this] legal

question.").  We leave the resolution of the legal issues raised by that argument for some future date.  *See Scott*, 529 F.3d at 1306 n.15 (noting that "we have never squarely decided" this point).

## CONCLUSION

For the foregoing reasons, Mr. Waseta's sentence is **AFFIRMED**.