**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 16, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

STEVEN CARMICHAEL WARREN,

       Defendant - Appellant.

No. 12-3136

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:11-CR-20040-WPJ-1)**

---

Warren R. Williamson, Federal Public Defender, and Jill M. Wichlens, Assistant Federal Public Defender for the Office of the Federal Public Defender, Denver, Colorado, for Defendant - Appellant.

Barry R. Grissom, United States Attorney, and Tristram W. Hunt, Assistant United States Attorney for the Office of the United States Attorney, Kansas City, Kansas, for Plaintiff - Appellee.

---

Before **BRISCOE**, Chief Circuit Judge, **O'BRIEN**, Senior Circuit Judge, and **PHILLIPS**, Circuit Judge.

---

**PHILLIPS**, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1 (G). This case is therefore submitted without oral argument.

Appellant Steven Carmichael Warren has faced criminal charges for much of his life. In 1998, he committed an armed bank robbery in Missouri and served about twelve years in federal prison.[1] In 2011, only one year after his release, he robbed another bank—this one in Kansas. He pleaded guilty to this second armed bank robbery, and the district court imposed a sentence of 25 years, the statutory maximum.

Warren now challenges the procedural reasonableness of that sentence. He contends that he disputed the factual accuracy of statements in the presentence report and that the district court erred by increasing his sentence after assuming the truth of those disputed statements. However, because Warren did not raise this contention in the district court, we review only for plain error. We find no error because Warren did not "dispute" the presentence report so as to prevent the district court from assuming the truth of its contents. Moreover, the district court did not rely on the sections at issue and instead considered other factors under 18 U.S.C. § 3553 in determining that a higher sentence was appropriate. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[1] Warren was charged with three separate Missouri bank robberies, but he pleaded guilty to counts arising from just one of them.

**BACKGROUND**

In 2011, Warren robbed the National Bank of Kansas City in Leawood, Kansas. During the robbery, he pointed a loaded semi-automatic handgun at two teller operators and demanded money. They complied, and Warren fled the bank with $7,030. After a short pursuit, police apprehended Warren—along with the handgun and stolen funds.

A grand jury returned a three-count indictment, charging Warren with (1) carrying a firearm during and in relation to and in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c), (2) armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and (3) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(a)(2) and (e). He pleaded guilty to the armed bank robbery count, and the government agreed to dismiss the other charges.[2]

Before Warren's sentencing, a probation officer prepared a presentence report (PSR). The PSR documented all of Warren's prior convictions, including an earlier federal felony conviction for armed bank robbery, a felony conviction for the sale of a PCP-laced cigarette, a felony conviction for child abuse, and over a dozen misdemeanor convictions—the majority of which involved violent conduct. As usual, the PSR also

---

[2] The government's decision to dismiss count one was significant as Warren had been convicted of the same charge in connection with the armed bank robbery in Missouri. A second conviction for this offense results in a statutory *minimum* sentence of twenty-five years in prison. *See* 18 U.S.C. § 924(c)(1)(C)(i). The district court expressed some doubt as to why this charge had been dismissed given that Warren's guilty plea provided a factual basis for conviction under § 924(c).

included a section entitled "Other Criminal Conduct." This section listed 22 of Warren's prior arrests and described from police reports the circumstances and conduct underlying the majority of those arrests—none of which had resulted in conviction. After determining that Warren qualified as a career offender, the PSR set forth an advisory guideline range of 188–235 months in prison.[3]

In response to the PSR, Warren objected to his classification as a career offender. In addition, he objected to the inclusion of paragraph 33 and paragraphs 56–76 of the PSR, all of which described his prior arrests not resulting in conviction.[4] Warren claimed that this conduct was old and open to "different conclusions," leaving one to "speculate about whether these incidents truly occurred." R. vol. 3, at 32–33.

Warren then filed a presentencing memorandum in which he did not object to the PSR calculations but asked the court to exercise leniency and refrain from applying the career-offender enhancement. Warren also repeated his objection to the inclusion of "other criminal conduct" in the PSR. This time, he appeared to challenge the relevance of this conduct on the ground that it was not sufficiently related to the offense of conviction.

---

[3] This was based on a total offense level of 31 and a criminal history category of VI, as determined by Warren's career-offender status.

[4] Paragraphs 56–76 made up the entire "Other Criminal Conduct" section. PSRs regularly feature a section of this variety and, in fact, must include "any prior criminal record" of a defendant. Fed. R. Crim. P. 32(d)(2)(A)(i); *see also* Fed. R. Crim. P. 32(d)(2)(G) (requiring inclusion of any "information relevant to the factors under 18 U.S.C. § 3553(a)").

He again stated that the other criminal conduct in the PSR was old (from 1995 or before) and that "due to the wording of the PSR, one is left with the option to speculate whether [the conduct] truly occurred." R. vol. 1, at 33. Warren also argued that his other criminal conduct should not be considered during sentencing because he "was never convicted." *Id.* at 36.

The government filed its own memorandum and argued for an upward variance from the advisory guideline range. It relied on the 18 U.S.C. § 3553 sentencing factors—particularly § 3553(a)(1), which requires sentencing courts to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Based on the findings in the PSR, the government asserted that Warren was a "violent career criminal" who, in addition to trafficking drugs and committing armed bank robberies, had been convicted of violent crimes against five separate women and a child. *Id.* at 51. The government asked for the statutory maximum—300 months in prison.

At sentencing, Warren renewed his objections. Once again, he argued that a career-offender enhancement would be unduly harsh, in part, because his prior convictions were old. He then raised the following objection to "other criminal conduct":

> There are some 20 paragraphs of conduct, that is, cases where the defendant was either charged and they were dismissed, not prosecuted, or he actually asserted his rights, went to trial, and received a non-guilty verdict. It cuts at the very core of what I consider our system to be about, which is the presumption of innocence. The mere fact that they are included in any way shifts that from a presumption of innocence to a presumption of guilt. These are cases that were never prosecuted, and we're left to try to decide why they weren't. As the government pointed out, we don't contest that he

may have been charged in cases or may have been arrested, but we wholeheartedly contest that the facts contained in this are correct.

R. vol. 2, at 54–55. Warren continued to assert that his other criminal conduct was old and that "without having any ability to test the veracity of . . . those statements . . . you could draw the conclusion that all those statements are false because they weren't prosecuted or they weren't believed by a jury." *Id*. at 56.

The district court determined that Warren was indeed a career offender and that the PSR had correctly calculated his advisory guideline range.[5] The court observed that Warren had not received any criminal history points for several prior convictions because they were too old. At the same time, however, the court did not feel as though Warren had been "living an otherwise law-abiding life" for many years; he was incarcerated for his first armed bank robbery from 1998 until 2010. Then, just one year after his release, Warren committed the instant armed bank robbery. The court concluded that Warren was just the type of offender Congress had in mind when it enacted the career-offender enhancement provisions.

The court then turned to the government's request for an upward variance and afforded Warren another opportunity to present argument. Warren urged the district court

---

[5] According to the PSR and pursuant to § 4B1.1(a), a career-offender enhancement may apply only where a defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense. Warren's prior felony convictions for the sale of PCP and his other armed bank robbery met this definition, as did the instant offense.

not to vary upward because it had already taken his criminal conduct into account in applying the career-offender enhancement and because, once again, his convictions were old.

After considering the § 3553 factors, the district court varied upward 65 months above the top of the advisory range to 300 months—the statutory maximum. The court relied primarily on the need to protect the public from Warren, stating that, given Warren's history, he was likely to commit more crimes unless incarcerated. The court discussed this history at length. It acknowledged Warren's objection that other criminal conduct had "been placed in the [PSR]" to "paint a picture of . . . a career criminal and a violent person." *Id*. at 84. But the court observed that it had already found Warren to be a career offender and that—importantly—his convicted conduct, standing alone, was "overwhelming evidence" demonstrating he was a violent person. *Id.* The court also said that it was "going to disregard" the other criminal conduct, even though the law permitted it to consider such conduct under 18 U.S.C. § 3553. *Id*. at 75, 83–84.

Warren did not say anything after the district court resolved his "other criminal conduct" objection. At the conclusion of the sentencing hearing, he generally stated that he was "in disagreement with the findings," but he did not identify the specific "findings" at issue. *Id*. at 89.

On appeal, Warren contends that the district court procedurally erred by ignoring his objection to facts in the PSR. According to Warren, the district court simply assumed

the truth of all disputed statements regarding his prior arrests not resulting in conviction, and then relied on those statements to impose a higher sentence.

## DISCUSSION

Following *United States v. Booker*, 543 U.S. 220 (2005), we review "both the reasonableness of the length of the sentence, as well as the method by which the sentence was calculated." *United States v. Romero*, 491 F.3d 1173, 1175 (10th Cir. 2007). Warren here challenges only the method by which the district court arrived at his sentence; he makes no argument that the length of his sentence is substantively unreasonable. His appeal is therefore limited to a claim of procedural unreasonableness.

 "A sentence is procedurally unreasonable if the district court incorrectly calculates or fails to calculate the Guidelines sentence, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, relies on clearly erroneous facts, or inadequately explains the sentence." *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 50–51 (2007)). Procedural reasonableness also requires that the district court "afford[] the defendant his rights under the Federal Rules of Criminal Procedure." *United States v. Martinez-Barragan*, 545 F.3d 894, 898 (10th Cir. 2008) (alteration omitted) (quoting *United States v. Geiner*, 498 F.3d 1104, 1107 (10th Cir. 2007)).

### 1. Standard of review

Warren argues that the district court erred by "simply adopt[ing]" the PSR in full and assuming the truth of its disputed contents. Appellant's Br. at 6. Federal Rule of

Criminal Procedure 32(i)(3)(B) governs this particular procedural challenge. It provides that a sentencing court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). A court does not satisfy its obligation under the rule by "simply adopting" a disputed PSR (or any portion thereof) as its finding. *United States v. Guzman*, 318 F.3d 1191, 1198 (10th Cir. 2003).

In *United States v. Williamson*, a defendant similarly claimed on appeal that the district court had failed to properly resolve disputed facts under the earlier (but materially indistinguishable) version of Rule 32(i)(3)(B). 53 F.3d 1500, 1526–27 (10th Cir. 1995). At or before sentencing, Williamson specifically objected to a factual statement in the PSR. *Id.* at 1526. The district court did not directly address Williamson's objection at sentencing, but it made a general finding that the "the Presentence Investigation Report, as corrected or modified . . . and the previously stated findings are accurate." *Id.* at 1526–27. On appeal, we acknowledged that this sort of general finding as to the accuracy of matters contained in the presentence report does not satisfy Rule 32 in the face of such a specific factual objection. *Id.* at 1527. But, because Williamson had not raised "a separate objection to the district court's failure to make an appropriate finding under [the earlier version of Rule 32(i)(3)(B]," our review was "limited to determining whether this alleged failure to make a specific finding amounted to plain error." *Id.* We held that any error of the district court did not rise to this level. *Id.*

We believe plain-error review is appropriate in this case as well. *See United States v. Cook*, 550 F.3d 1292, 1297–98 (10th Cir. 2008) (applying plain-error review in similar circumstances in light of *Williamson*). Like the defendant in *Williamson*, Warren made no separate objection to the district court's alleged failure to resolve his factual objection to the PSR. At no time during sentencing did he speak up and say the district court had violated Rule 32 or failed to properly resolve disputed facts. Instead, Warren merely voiced his "disagreement with the findings" at the conclusion of the sentencing hearing. R. vol. 2, at 89. This form objection did not alert the district court to the challenge Warren now raises on appeal. To the contrary, Warren's "disagreement" could have applied to multiple "findings" at sentencing, including the court's application of the career-offender enhancement or statements made in discussing the § 3553 sentencing factors.[6]

Indeed, our basis for applying plain-error review here is stronger than it was in *Williamson.* There, the district court merely accepted the PSR without addressing Williamson's factual objection. By contrast, the district court in this case expressly addressed Warren's objection to the PSR. The court stated Warren's objection on the record. (He objected that other criminal conduct "[had] been placed in the [PSR]"

---

[6] Moreover, Warren does not really take issue with the district court's "findings" on appeal. Instead, he simply argues that the district court improperly assumed the truth of statements in the PSR. His challenge is thus based on the *absence* of factual findings, not on any affirmative finding made by the district court.

because it "paint[ed] a picture of . . . a career criminal and a violent person." R. vol. 2, at 84.) It then proceeded to resolve that objection by finding (1) that Warren was a career offender for other reasons, and (2) that his convictions provided "overwhelming evidence" that Warren was a violent person. *Id*. The district court further resolved Warren's objection by stating its view that the law permitted it to consider prior arrests not resulting in conviction for sentencing purposes—but that it would choose *not* to consider Warren's arrests.[7] *Id*. at 75–76, 83–84. If Williamson had no excuse for her failure to object when the court simply ignored her challenge to the PSR, then surely Warren has no excuse where the district court specifically addressed his concerns with the PSR on the record. If Warren believed the court misunderstood his objection or otherwise failed to properly resolve it, he needed to say so then to avoid plain-error review now.

## 2. The district court did not commit plain error

---

[7] The district court specifically stated as follows:

> Now, there is other criminal conduct. Paragraph 56, this was a charge of rape. That case did go to trial; the defendant was found not guilty; so I'm going to disregard that. And I'm going to disregard the other—although I think the law allows me to certainly consider that in addition to the charge in Paragraph 56 that resulted in a not-guilty verdict as well as the charges referenced in Paragraphs 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, and then there's several other arrests other than these.

R. vol. 2, at 83–84. While the district court could have been clearer in stating its intention to disregard Warren's other criminal conduct, we understand "disregard the other" to mean the aforementioned "other criminal conduct."

- 11 -

"We find plain error only when there is (1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Romero*, 491 F.3d at 1178. Upon review of the record in this case, we conclude that Warren cannot satisfy even the first prong of plain error because the district court did not violate Rule 32(i)(3)(B) in determining his sentence.

We review compliance with the Rules of Criminal Procedure de novo. *United States v. Cereceres-Zavala*, 499 F.3d 1211, 1214 (10th Cir. 2007). As stated, Rule 32(i)(3)(B) requires a sentencing court to make one of two possible determinations whenever any portion of a PSR is "disputed." Fed. R. Crim. P. 32(i)(3)(B). A court must either "rule on the dispute" or "determine that a ruling is unnecessary." Fed. R. Crim. P. 32(i)(3)(B).

In this case, the district court arguably determined that a ruling was unnecessary as permitted under the rule. After all, the court resolved Warren's objection to the PSR by stating its intention to "disregard" the "other criminal conduct." R. vol. 2, at 83–84. Rule 32(i)(3)(B) expressly provides that a district court may determine that a ruling on a disputed matter is unnecessary when "the court will not consider the matter at sentencing." Given this determination, no other ruling was necessary under Rule 32(i)(3)(B).[8]

---

[8] Warren seems to equate the checked box adopting the PSR in the "Statement of Reasons" with an affirmative factual finding that all statements in the PSR were true. If

(Continued . . .)

To the extent that the district court's determination could have been clearer, Warren's general and ill-defined objection to the PSR is to blame. After all, Rule 32(i)(3)(B) applies only if facts in the PSR are disputed by specific objection. *See United States v. Waseta*, 647 F.3d 980, 989 n.6 (10th Cir. 2011) ("Though Mr. Waseta made a general, unspecified objection to 'allegations in the [PSR] that have been suggested as [grounds for] a possible upward variance' . . . this sort of general objection is inadequate to trigger a district court's factfinding obligation under Rule 32." (alterations in original)). Warren's objection in this case was far too general, covering some "20 paragraphs" of the PSR.

Additionally, a defendant does not "dispute" a PSR's recitation of facts underlying his arrests unless he presents "information to cast doubt on" the facts. *United States v. Yates*, 22 F.3d 981, 989 (10th Cir. 1994). If a PSR is *not* disputed in this fashion, it is well established that a district court is free to rely on the PSR at sentencing. *Id.*; *see United States v. Mateo*, 471 F.3d 1162, 1166 (10th Cir. 2006) (affirming upward variance where the district court relied on uncontested facts included in the PSR relating to the defendant's prior arrests). Warren has not presented any evidence whatsoever to contradict the information in the "Other Criminal Conduct" section of his PSR.

Finally, Rule 32(i)(3)(B) "is not a vehicle for advancing legal challenges to sentencing," *Cereceres-Zavala*, 499 F.3d at 1214, and we believe Warren's objection was

that is his assumption, he is wrong. Further, a court's adoption of a PSR is only problematic if it is disputed—which, as discussed, was not the case here.

more legal than factual.[9] From the start, Warren objected to use of the "other criminal conduct" not because he sought to correct certain factual inaccuracies, but because he wanted it struck from the report entirely. Before sentencing, he claimed the conduct was old, irrelevant, and subject to different interpretations. Even at sentencing, he initially objected to the inclusion of the "some 20 paragraphs of conduct" not because it was factually inaccurate, but because it "shift[ed] . . . a presumption of innocence to a presumption of guilt." R. vol. 2, at 54. Warren's "other criminal conduct" objection thus went to the relevance and stale nature of that conduct, as well as to the absence of convictions in those cases. It was only at the last minute at the sentencing hearing that Warren's attorney said in passing: "we don't contest that he may have been charged in cases or may have been arrested, but we wholeheartedly contest that the facts contained in this are correct." *Id.* at 55. It is no wonder that the district court might not have perceived Warren's objection to be factual in nature in light of this single stray comment. And it is no wonder that Warren failed to raise a Rule 32(i)(3)(B) objection following the district court's proper resolution of what had always been his objection to the PSR— namely, that his "other criminal conduct" should be off-limits, not because it was all

---

[9] We believe this to be the case despite Warren's claim that the government acknowledged that he had contested facts. At no point did the government acknowledge or concede that Warren had contested the veracity of any fact in the "Other Criminal Conduct" section. As quoted in the PSR, the government merely responded to Warren's objection to the inclusion of this section by arguing in part that Warren had previously failed to contest (or object to) the nearly identical PSR prepared following his armed bank robbery conviction in Missouri.

factually untrue, but because it was old, irrelevant, or had never resulted in conviction.[10] This objection does not challenge "factual inaccuracies in the report," *Cereceres-Zavala*, 499 F.3d at 1214, but rather the district court's ability to consider prior arrests not resulting in conviction as a matter of law.

Even assuming the first two prongs of plain error, Warren cannot show that his rights have been substantially affected as required under prong three. Even if we assumed that Warren raised a sufficient factual objection to the accuracy of the PSR *and* assumed that the district court failed to comply with Rule 32(i)(3)(B), we still would see no reason to remand for resentencing—nothing suggests a different sentence would result.

This is all the more true given the persuasive reasons the district court gave for its sentence, none of which depended on the specific facts underlying Warren's "other criminal conduct." First, the court discussed the significance of the dismissed § 924(c) charge under count one and the need to punish Warren for his second use of a gun during a crime of violence. Second, the court observed Warren had spent 87% of his last 29 years either facing charges or serving a sentence of some kind—a fact Warren all but admitted.[11] Third, the court considered that Warren had committed "strikingly similar"

---

[10] Warren does not renew these objections to "other criminal conduct" on appeal, although the government dedicates its response brief to the argument that prior arrests not resulting in conviction are fair game at sentencing. Undoubtedly, the government is also confused by Warren's changing objection to the PSR.

[11] At sentencing, Warren admitted that he "may have been charged in cases or may
(Continued . . .)

conduct before when he had pointed a loaded handgun at multiple bank employees in connection with his first conviction for armed bank robbery. R. vol. 2, at 62. And fourth, from the court's perspective, Warren's prior convictions overwhelmingly demonstrated he was a violent person. These were all permissible considerations under 18 U.S.C § 3553 and, contrary to Warren's argument, the sentence in this case did *not* depend on the "other criminal conduct" in the PSR. Indeed, the district court never made any affirmative finding that Warren had engaged in the "other criminal conduct" or that the facts underlying his arrests were true.

## CONCLUSION

Based on the foregoing, the judgment of the district court is AFFIRMED.

---

have been arrested." R. vol. 2, at 55. Similarly, he stipulated to admission of the government's exhibit demonstrating the percent of time he had spent either facing charges or serving a sentence.