FILED
United States Court of Appeals
Tenth Circuit

**June 6, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

COREY ALLAN DONALDSON,

Defendant-Appellant.

No. 13-8063
(D.C. No. 1:13-CR-00045-ABJ-1)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **ANDERSON** and **BRORBY**, Senior Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is, therefore,

submitted without oral argument.

Defendant Corey Donaldson was convicted by a jury of a single count of bank

robbery, in violation of 18 U.S.C. § 2113(a), and was sentenced to 70 months'

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

imprisonment, to be followed by three years of supervised release. Donaldson, appearing pro se, now appeals his conviction and sentence.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and restricting our consideration to only those issues that can be appropriately addressed in this direct criminal appeal, we affirm Donaldson's conviction and sentence. We also dismiss without prejudice Donaldson's claims of ineffective assistance of trial counsel and his claims relating to incidents that allegedly occurred during his pretrial detention in a county jail. These claims fall outside the realm of issues that can be addressed in a direct criminal appeal.

I

*Factual background*

On the afternoon of Friday, December 28, 2012, Donaldson called the U.S. Bank in Jackson Hole, Wyoming, and scheduled an appointment to meet with the bank's manager on Monday, December 31, 2012. Donaldson arrived at the scheduled meeting and proceeded to convince the bank manager to give him a significant amount of money. Donaldson began by describing to the bank manager certain violent events that had occurred at the hands of drug cartel members who were connected with a textiles manufacturing plant that Donaldson had purportedly purchased in Mexico. Donaldson informed the bank manager that these same cartel members were outside the bank building observing and had directed Donaldson to hand the manager a note. Donaldson then handed the bank manager a note, purportedly written by the cartel members, that

2

demanded "$2 million in cash." ROA, Vol. 3 at 65. The note stated that "four military-grade explosives . . . had been . . . buried in the snow" outside the bank, id. at 64, and that if the bank manager did not comply with the cartel members' demands he would "be hunted down and killed," id. at 65. The bank manager, believing the demand and related threats were real, responded by giving Donaldson $140,750 in cash.

Donaldson was subsequently arrested on January 22, 2013, in Clinton City, Utah. At the time of his arrest, Donaldson was found to be in possession of $16,053 in cash. A search of Donaldson's hotel room produced an additional $19,087 in cash. Subsequent investigation revealed that Donaldson gave approximately $8,000 of the robbery proceeds anonymously to an unemployed friend, and approximately $15,000 to the Salvation Army. Donaldson alleged that he also gave some of the money to homeless individuals in California and Nevada.

*Procedural background*

In March 2013, a federal grand jury indicted Donaldson on a single count of bank robbery, in violation of 18 U.S.C. § 2113(a). Donaldson moved to represent himself at trial. The district court, after conducting a hearing, granted Donaldson's motion. In doing so, the district court noted that it had advised Donaldson of "the dangers and disadvantages of self-representation," but nevertheless found that Donaldson "ha[d] knowingly and voluntarily waived the right to counsel and [wa]s committed in his determination to represent himself." Dist. Ct. Docket No. 28 at 1-2.

Prior to trial, the district court held a hearing to consider Donaldson's proposed

3

necessity defense. Donaldson asserted that there were many people who were homeless "on the streets of America strictly because of policies enacted by certain banks." ROA, Vol. 3 at 29. "The reason a bank was targeted," Donaldson asserted, "was that [he] knew when the time came at trial that [he] would get to examine certain people responsible for the policies that put people on the streets." Id. In addition, Donaldson asserted, he was able to use the proceeds from the bank robbery to actually assist several homeless people in Reno, Nevada. The district court, citing our decision in United States v. Butler, 485 F.3d 569, 572 (10th Cir. 2007), concluded that Donaldson had failed to make the showing necessary to be entitled to present a necessity or justification defense. ROA, Vol. 3 at 32-33. Consequently, the district court declined to "issue subpoenas to those persons [Donaldson] delivered money that allegedly was taken from the bank . . . for their use." Id. at 33.

The case proceeded to trial on April 29, 2013. Donaldson represented himself at trial, but on occasion sought advice, and indeed allowed argument to the court, from his appointed standby counsel. At the conclusion of the evidence, the jury found Donaldson guilty of the single count alleged in the indictment.

On July 11, 2013, the district court sentenced Donaldson to a term of imprisonment of 70 months, to be followed by a three-year term of supervised release.

Judgment was entered on July 15, 2013. Donaldson filed a notice of appeal the

4

following day.[1]

## II

In his pro se appellate brief, Donaldson raises "six specific issues of syndicated Constitutional Atrocities" that purportedly occurred at his trial. Aplt. Br. at 2. According to Donaldson, these six issues include: "Ineffective Assistance of Counsel - 6th Amendment," "Denial of right to a fair trial - 1st, 9th, 14th Amendments," "Denial of Due Process - 5th, 14th Amendments," "Denial of Access to Courts - 1ST Amendment," "Denial of Equal Protection of the Law - 14th Amendment," and "Unlawful Search and Seizure - 4th Amendment." Id.

As discussed in greater detail below, we conclude that Donaldson's claims of ineffective assistance of counsel are premature and must be raised, if at all, in post-conviction proceedings filed pursuant to 28 U.S.C. § 2255. To the extent that Donaldson is complaining of events that occurred while he was confined in jail prior to or during trial, we conclude that those claims are not the proper subject of a direct criminal appeal and must therefore be dismissed. Finally, as to the claims that are properly before us, we conclude there is no merit to them and, consequently, we affirm Donaldson's conviction and sentence.

---

[1] We initially appointed a federal public defender to represent Donaldson on appeal. Donaldson subsequently filed a letter, however, that we construed as a motion to proceed pro se on appeal. After consideration, we granted Donaldson's motion and relieved his appointed counsel of any duty to represent Donaldson in this appeal.

*1) Ineffective assistance of counsel during sentencing proceedings*

In his first issue on appeal, Donaldson alleges that his appointed counsel, James Barrett, was ineffective in a number of respects during the course of the sentencing proceedings. To begin with, Donaldson alleges that on June 8, 2013, he wrote a letter asking that Barrett "please restore [his] position as [Donaldson's] attorney" for purposes of Donaldson's upcoming sentencing proceeding. Aplt. Br. at 3. The letter, Donaldson asserts, also asked for Barrett's advice regarding what Donaldson could do "to reduce [his] sentence as much as possible" and how he could improve his written "sentencing suggestions" to the probation officer who prepared his presentence investigation report (PSR). Donaldson alleges that Barrett ignored his letter, leaving him "against [his] will as Pro Se" at his sentencing hearing. Id. Although Donaldson ultimately concedes that Barrett represented him at the sentencing proceeding, he nevertheless asserts that Barrett "was ineffective for failing to investigate . . . and present any mitigating evidence during [the] sentencing phase of trial." Id. at 4. In particular, Donaldson asserts that "several of [his] relatives, friends, and witnesses were available and willing to testify on [his] behalf." Id. Donaldson also complains that Barrett described Donaldson's pro se "sentencing statement" as "'absolutely ridiculous.'" Id. In addition, Donaldson asserts that Barrett "provided [the district court with] no detailed history or proven characteristics of [Donaldson's] life dedicated to serving others." Id. at 5. Lastly, Donaldson complains that Barrett, in his arguments to the district court, agreed that a sentence within the middle of the advisory guideline range would be appropriate.

6

"Ineffective-assistance-of-trial-counsel claims on direct appeal are generally disfavored in this circuit." United States v. Battles, 745 F.3d 436, 457 (10th Cir. 2014). "When these claims are brought on direct appeal, they are presumptively dismissible, and virtually all will be dismissed." Id. (internal quotation marks omitted). "The reason for this approach is to ensure that 'a factual record enabling effective appellate review may be developed in the district court.'" Id. (quoting United States v. Hamilton, 510 F.3d 1209, 1213 (10th Cir. 2007)). "Our court recognizes a narrow exception to this principle 'only where the issue was raised before and ruled upon by the district court *and* a sufficient factual record exists.'" Id. (emphasis in original) (quoting United States v. Flood, 635 F.3d 1255, 1260 (10th Cir. 2011)).

After reviewing Donaldson's pro se appellate brief and the record on appeal, we conclude that "the prudent course is to withhold consideration of [Donaldson's] ineffective-assistance claim." Id. That is because Donaldson's allegations of ineffective assistance were never presented to or ruled on by the district court, and, consequently, there is not a sufficient factual record concerning those allegations. As a result, we will dismiss Donaldson's allegations of ineffective assistance "without prejudice so that the district court may address [them] in collateral proceedings [under 28 U.S.C. § 2255] in the first instance" should Donaldson decide to file such a petition to pursue this claim. Battles, 745 F.3d at 458.

*2) Denial of right to a fair trial*

In his second issue on appeal, Donaldson asserts that he was denied the right to a

7

fair trial due to various failures on the part of Barrett.  In particular, Donaldson complains that Barrett: (a) did not adequately research the facts or the law and thus left Donaldson with no viable defense to the charge; (b) never made an effort to secure a plea bargain and instead urged Donaldson "to plead blindly" to the charge in the indictment, Aplt. Br. at 7; (c) refused to help Donaldson prepare to be questioned by the prosecution, thereby forcing Donaldson "not to take the witness stand," id. at 9; (d) improperly advised Donaldson to provide the government with copies of all motions he filed with the district court and thereby afforded the government with advance notice of Donaldson's intent to rely on a necessity defense; (e) did not assist Donaldson in retrieving legal documents that were seized by jail personnel while Donaldson was preparing for sentencing; and (f) "was notoriously difficult to get on the phone" and "routinely dodged [Donaldson's] calls or missed appointments," id. at 11.  In short, Donaldson argues that he "was deprived of a fair trial because [he] did not have counsel devoting a full effort to [his] defense," id., and he was effectively "cornered into being Pro Se," id. at 7.  While styled as a denial of fair trial claim, these allegations again are ineffective assistance of counsel claims.

Because Donaldson did not present any of these allegations to the district court, there is no factual record nor any ruling by the district court for us to review.  Consequently, as with Donaldson's first claim, we conclude that we must dismiss this claim without prejudice.

### 3) Denial of due process

In his third claim on appeal, Donaldson claims that he was denied due process as a

8

result of several unrelated incidents that occurred during trial. We shall proceed to address each of these incidents in turn.

### a) Barrett's preparation for sentencing

To begin with, Donaldson alleges that Barrett "never told" him that "[i]t is standard due process among lawyers to prepare a sentencing memorandum prior to sentencing," nor did Barrett "prepare or submit such a memorandum." Aplt. Br. at 12. "This fact is even more heinous," Donaldson asserts, "when one knows that . . . Barrett refused to represent [him] at sentencing." Id.

As with the previous allegations of ineffective assistance, we conclude that these allegations must be dismissed without prejudice because they were never presented to nor ruled on by the district court. Should Donaldson file a petition for post-conviction relief raising these allegations, they can be properly reviewed at that time.

### b) Incidents at county jail

Donaldson next complains about two events that allegedly occurred while he was housed at a county jail awaiting trial. First, Donaldson alleges, his "legal paperwork was confiscated without a hearing." Id. Second, Donaldson alleges that "[a]fter [he] returned to [the] jail with a guilty verdict [he] was immediately sequestered into solitary confinement for one day, then the next day . . . was stripped naked, and left in the cell for 4 days!" Id. According to Donaldson, this "was done because 'someone' said [he] made a comment about suicide (which never happened)." Id.

We conclude that these allegations are not the proper subject of a direct criminal

9

appeal because, even if they are true, they do not call into question the legality of Donaldson's conviction or sentence. Consequently, we dismiss them without prejudice.

### c) Juror misconduct

Donaldson asserts two separate instances of purported juror misconduct. "We review a district court's decision regarding juror misconduct or bias for an abuse of discretion." United States v. Hall, 473 F.3d 1295, 1304 (10th Cir. 2007).

Donaldson first alleges that "a juror disobeyed [the district court's] instructions having made up her mind . . . that [he] was guilty before the Governments [sic] case was even complete." Aplt. Br. at 13. "This juror," Donaldson alleges, "decided autonomously to regard arguments as evidence and refused to wait until all evidence was in before deciding upon a verdict, directly disobeying the courts [sic] instructions." Id. "She should have," Donaldson argues, "been replaced for misconduct." Id.

We assume that Donaldson is referring to an incident that occurred after the lunch break on the first day of trial. At that time, Juror No. 34 "asked to speak" with the court. ROA, Vol. 3 at 119. Out of the hearing of the other jurors, but in the presence of Donaldson, Barrett, and government counsel, Juror No. 34 stated to the district court: "Yes, and thank you so much for seeing me, and I'm here with all due respect, and I'm not trying to rock any boats here, but if – I just have to have some clarification. If the defendant is guilty, has admitted guilt, what am I judging?" Id. The district court responded, "Well, I think you just have to be patient." Id. After excusing Juror No. 34 to return to the jury room, the district court advised the parties that it believed the proper

10

course was to give Juror No. 34 "a little further instruction," id. at 122, and to specifically

"tell her to keep an open mind and reinforce what her duties are," id. at 123.

Consequently, the district court, again in the presence of Donaldson, Barrett, and

government counsel, but outside the presence of the other jurors, engaged in the

following colloquy with Juror No. 34:

> THE COURT: Juror No. 34, I wanted to emphasize to you that you have only heard part of the case.
>
> JUROR NO. 34: Okay.
>
> THE COURT: You have not heard all of the evidence in this case.
>
> JUROR NO. 34: Okay.
>
> THE COURT: Try to keep an open mind –
>
> JUROR NO. 34: I will.
>
> THE COURT: – until the very end of the case, hear the Court's instructions, and then you may deliberate. Again, I want to reinforce that you are not to discuss this case –
>
> JUROR NO. 34: No.
>
> THE COURT: – until it is finally submitted to you.
>
> JUROR NO. 34: No, I haven't, or I wouldn't.
>
> THE COURT: All right.

Id. at 123-24. Donaldson did not move for a mistrial, nor did he file any other type of

motion, on the basis of this incident.

We conclude that the district court did not abuse its discretion, either in the manner

11

in which it chose to address Juror No. 34 or in its decision to allow Juror No. 34 to remain on the jury panel. In particular, Juror No. 34's responses to the district court's questions indicated a willingness to consider all of the evidence presented before rendering a decision in the case. Consequently, we are not persuaded that Donaldson was deprived of his right to a fair trial, or that his due process rights were violated in any way, as a result of the incident involving Juror No. 34.[2]

Donaldson also alleges that after all of the "evidence was in, . . . one juror (alternate) disobeyed [the district court's instructions] by refusing to separate from the twelve jurors and went to lunch with all twelve." Aplt. Br. at 14. According to Donaldson, "[t]his shows not only that one juror disobeyed the courts [sic] instructions yet again, but all twelve disobeyed the courts [sic] instructions by allowing the alternate to remain with them, in the face o[f] instructions to 'separate.'" Id.

The record on appeal indicates that, at the conclusion of all the evidence and the closing arguments, the district court informed the jury that it was "time . . . for [it] to separate" the two alternate jurors from the twelve jurors who would actually decide the case. ROA, Vol. 3 at 225. Consequently, the district court formally "excuse[d] the [two] alternate jurors" and recessed court pending a verdict. Id. The jury then, exercising its discretion, immediately took a lunch break. One of the alternate jurors joined the jury for

---

[2] In a related point, Donaldson asserts that Barrett "declined" to speak to Donaldson "privately about what was happening" with Juror No. 34, "raising yet again the question of ineffective assistance of counsel." Aplt. Br. at 13. We dismiss this allegation without prejudice for the reasons previously stated.

12

lunch and then left afterwards. After the jury concluded its lunch break, the issue of the

alternate juror joining the jury for lunch was raised to the district court. The district court

responded by bringing the jury into the courtroom and questioning them. One of the

jurors "stated [the] facts of lunch and [the] associations at lunch with [the] alternate

juror." Dist. Ct. Docket No. 63 at 2. The district court found that "deliberations had not

commenced" at the time the alternate juror joined the jury for lunch, and consequently

concluded that no error had occurred. The district court in turn recessed the court and

allowed the jury to begin its deliberations. After deliberating for approximately an hour,

the jury returned with its verdict and found Donaldson guilty as charged in the

indictment.

We conclude that the district court did not abuse its discretion, either in the manner

in which it investigated this incident or in its ultimate resolution of the incident.

Moreover, we are not persuaded that the incident impacted in any way Donaldson's right

to a fair trial.

### d) Inaccuracies in the PSR

Donaldson alleges that the PSR "was so completely burdened with inaccuracies

that it took [him] 23 pages of hand written notes to address each inaccuracy one by one,"

yet "not one inaccuracy [was] corrected" by the probation officer responsible for

preparing the PSR. Aplt Br. at 15. Instead, Donaldson complains, the probation officer

"merely submitted [Donaldson's] notes along with the PS[R]" to the district court,

"leaving [it] to figure out what was or was not accurate." Id. And, Donaldson argues, the

13

"shambles of a PS[R] set up a prejudicial view of who [Donaldson] was to the judge, affecting unfairly the sentencing proceeding, and atrociously corrupting due process." Id.

We construe Donaldson's arguments as a challenge to "the method by which [his] sentence was calculated," i.e., "a claim of procedural reasonableness." United States v. Warren, 737 F.3d 1278, 1283 (10th Cir. 2013) (internal quotation marks omitted). "We ordinarily review procedural aspects of a district court's sentencing decision for abuse of discretion." United States v. Lucero, 747 F.3d 1242, 1246 (10th Cir. 2014).

"Federal Rule of Criminal Procedure 32(i)(3)(B) governs th[e] particular procedural challenge" asserted by Donaldson. Warren, 737 F.3d at 1283. "It provides that a sentencing court 'must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing.'" Id. (quoting Fed. R. Crim. P. 32(i)(3)(B)).

During Donaldson's sentencing hearing, the district court noted that it had "read and reviewed" the "23-page . . . comment on the P[SR]" that Donaldson mailed to the probation officer. ROA, Vol. 3 at 234. In turn, the district court stated that it "could not find that [Donaldson's] comments directly challenged the [PSR's] application of the sentencing guidelines." Id. at 236. Rather, the district court concluded, Donaldson's comments "attempted to inform the Court about collateral information contained in the [PSR], significant among them [being Donaldson's] view of [his] relationship with [government witness] Kevin Day . . . and [Donaldson's] relationship with [his] former

14

wife who was interviewed by [the probation officer], as well as other family members."
Id. at 236-37. Ultimately, the district court adopted the PSR's guidelines calculations and imposed a sentence in the middle of the advisory guidelines range.

We conclude that the district court did not violate Rule 32(i)(3)(B), and in turn did not abuse its discretion, in summarily disposing of Donaldson's written objections to the PSR. Notably, Donaldson does not dispute the district court's determination that Donaldson's written objections to the PSR failed to challenge any portions thereof that were relevant to the proposed guidelines calculations. And, in any event, our own review of Donaldson's written objections confirms the district court's determination.

*4-6) Incidents at county jail while awaiting trial and sentencing*

In his fourth, fifth, and sixth issues on appeal, Donaldson complains of certain incidents that allegedly occurred while he was housed in a county jail awaiting trial and sentencing. In particular, Donaldson asserts that jail personnel searched and seized his legal paperwork. Donaldson also asserts that he "was denied access to talking to [his] family." Aplt. Br. at 17. Donaldson does not assert, however, that these incidents had any impact on his conviction or sentence. We therefore dismiss Donaldson's allegations without prejudice. These allegations must be asserted, if at all, in a civil rights action brought pursuant to 42 U.S.C. § 1983.

III

We AFFIRM Donaldson's conviction and sentence. We DISMISS without prejudice Donaldson's claims of ineffective assistance of trial counsel and his claims of

15

civil rights violations that allegedly occurred while he was confined awaiting trial and

sentencing.

Entered for the Court

Mary Beck Briscoe
Chief Judge

16